39295/01245MHW/SJG

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHEN J. TURVEY (#S-11978), | |
| Plaintiff, | |
| v. | |
| TARRY WILLIAMS, Warden, SERGEANT DURRANT, Correctional Sergeant, DR. OBAISI, Medical Administrator, C/O DEYOUNG, Correctional Officer, | Case Number 14 CV10332 |
| | Judge Manish S. Shah |
| Defendants. | Magistrate Judge Mary M. Rowland |

## SALEH OBAISI, M.D.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendant, SALEH OBAISI, M.D. ("Dr. Obaisi"), by and through his attorneys, CASSIDAY SCHADE LLP, and for his Memorandum of Law in Support of Summary Judgment, states as follows:

### I. INTRODUCTION

Plaintiff, an inmate in the custody of the Illinois Department of Corrections, filed this action pursuant to 42 U.S.C. § 1983 alleging that Saleh Obaisi, M.D., violated his Eighth Amendment and Fourteenth Amendment constitutional rights. Plaintiff's cause of action arises out of his time spent at the Stateville Correctional Center ("SCC") in Joliet, Illinois. Plaintiff alleges that while at SCC, he was provided a diet containing genetically modified soy. Plaintiff claims that eating the soy in his meals caused him to develop a host of medical conditions, including: "sharp pains in the digestive tract, chronic and painful constipation alternating with debilitating diarrhea, hypothyroidism, brain fog, nasal congestion, acne, and depression [. . . .]" *See* [ECF #1, Plaintiff's Complaint at ¶ 31].

1

Plaintiff alleges that Dr. Obaisi maliciously made "plaintiff eat the Genetically Modified Soy (GMS) and forcing plaintiff to get sick all over again or forcing the plaintiff to starve" in violation of his Eighth Amendment rights. [ECF #1 at ¶ 42]. Plaintiff further alleges that Dr. Obaisi maliciously failed to "provide plaintiff a proper diet tray (when it is available)" in violation of his Eighth and Fourteenth Amendment rights. [*Id*. at ¶ 43]. Dr. Obaisi has no control over the diets that are available to inmates at SCC, and can only prescribe the therapeutic diets that the IDOC makes available for prescription. [Saleh Obaisi M.D.'s Local Rule 56.1(a) Statement of Material Facts (hereinafter "Obaisi SOF") at ¶¶ 6, 23].

<u>Plaintiff admitted at his deposition that he has never seen Dr. Obaisi, does not know what he looks like, and did not have any medical appointments with Dr. Obaisi while incarcerated at SCC.</u> [Obaisi SOF at ¶ 4]. Dr. Obaisi confirmed that he had no personal involvement in Plaintiff's medical treatment after reviewing Plaintiff's medical records from the period of Plaintiff's incarceration at SCC. [*Id*.]. Likewise, Dr. Obaisi was not aware that Plaintiff believed the soy in his meals was causing him to have medical complications. [*Id*. ¶ 5]. Dr. Obaisi was not aware that Plaintiff wanted a soy free diet. [*Id*.]. Dr. Obaisi did not receive any correspondence from Plaintiff stating that the soy in his meals was causing him to develop health problems, or that he wanted a soy-free diet. [*Id*.].

Moreover, Dr. Obaisi has no control or authority over the diets that are served to inmates at SCC. [Obaisi SOF at ¶ 6]. The Illinois Department of Corrections controls, develops, and implements the menus and meals that are served to inmates, including those at the Stateville Correctional Center. [*Id.*]. The Illinois Department of Corrections provides several therapeutic medical diets for inmates, such as diets for diabetics. [*Id.*]. As a physician working inside of a

prison maintained by the Illinois Department of Corrections, Dr. Obaisi can only prescribe the therapeutic diets that are provided by the Illinois Department of Corrections. [*Id*.].

Despite the utter lack of Dr. Obaisi's involvement in Plaintiff's medical care, Plaintiff submitted a grievance on April 11, 2014 complaining of the soy in his diet and his medical treatment at SCC. [Obaisi SOF at ¶ 26]. This grievance does not name Dr. Obaisi, nor cite any specific instances of deficient medical treatment. [*Id*.]. In fact, when Plaintiff submitted his grievance, he had yet to seek out any medical care provider to address the alleged ailments he suffered as a result of the soy in his meals. [*Id*. ¶¶ 12, 26]. Plaintiff's first appointment to address his various medical issues did not occur until May 13, 2014. [*Id*. ¶ 12].

Despite knowing how the grievance process works, Plaintiff appealed the denial of his grievance directly to the IDOC's Administrative Review Board. [Obaisi SOF at ¶¶ 24, 27]. The ARB reviewed Plaintiff's grievance and returned it to him, requesting more information, including his counselor's response, his grievance officer's, and the Chief Administrator's Office response. [*Id.* ¶¶ 28–30]. Plaintiff never followed up with the request for information, and therefore, Plaintiff's grievance (which did not name Dr. Obaisi, or cite any deficient medical care) remains indefinitely unexhausted to this day. [*Id*. ¶¶ 31–33]. Moreover, it would now be too late for Plaintiff to provide the information requested by the ARB.

Based on the foregoing, no reasonable jury could conclude that Dr. Obaisi violated Plaintiff's Eighth or Fourteenth Amendment Rights, and summary judgment should be entered in favor or Dr. Obaisi. Moreover, as a threshold matter, Plaintiff failed to exhaust his administrative remedies prior to bringing this suit as required by 42 U.S.C. § 1997(e)(a) and 20 Ill. Admin. Rule § 504.800–870 and therefore, his case must be dismissed. Thus, summary judgment should be entered in favor of SALEH OBAISI, M.D. and against Plaintiff.

39295/01245MHW/SJG

## II. APPLICABLE LAW

### A. Summary Judgment

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "A mere scintilla of evidence" in support of the non-movant's position is insufficient; a party will only be successful in opposing summary judgment "when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, 246 F.3d 927, 931–32 (7th Cir. 2001).

### B. Requirement to Exhaust Administrative Remedies Prior to a Lawsuit

Federal law states that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility, until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). Because exhaustion of administrative remedies is a condition precedent to filing suit, a plaintiff's suit must be dismissed if administrative remedies are not fully and properly exhausted. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Failure to follow a state's administrative remedies requirements bars suit under Section 1983. Accordingly, a plaintiff must pursue all administrative remedies no matter what relief is sought, including monetary damages. *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *Pavey*, 544 F.3d at 740.

The Seventh Circuit requires strict compliance to exhaustion of administrative remedies. *Santiago v. Snyder*, 211 Fed. App'x. 478, 480 (7th Cir. 2006); *Cannon v. Washington*, 418 F.3d

4

714, 718 (7th Cir. 2005). Because exhaustion requires compliance with the prison's administrative procedures, a prisoner can exhaust his administrative remedies only through the completion of such procedures. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002); *Santiago*, 211 Fed. App'x. 478, 480; *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005); *McCoy v. Gilbert*, 270 F.3d 503, 510 (7th Cir. 2002); *Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (dismissing defendant doctors because, although inmate exhausted grievances regarding conduct of other prison officials, he did not do so relative to his medical providers).

There is no substantial compliance exception to the PLRA's exhaustion requirement. Rather, exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly." *Chess v. Pindelski*, No. 07 C 5333, 2009 U.S. Dist. LEXIS 4685 at *3 (N.D. Ill. Jan. 23, 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006), and *Pozo*, 286 F.3d at 1024). Proper use of the prison grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. If the prisoner fails to properly use the prison's grievance process, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be considered indefinitely unexhausted. *Pozo*, 286 F.3d at 1025; *Woodford*, 548 U.S. at 89–90. *See also Hamilton v. Allen*, 2009 U.S. Dist. LEXIS 13196 (N.D. Ill. Feb. 18, 2009) (granting summary judgment even though the inmate attached a grievance to his complaint because the grievance did not have a stamp from the grievance office); *Faysom v. Timm*, No. 04 C 8312, 2005 U.S. Dist. LEXIS 27860 (N.D. Ill. Nov. 9, 2005) (dismissing inmate's lawsuit where the ARB asked Plaintiff for additional information in order to process his appeal, including a copy of the grievance officer's response, but Plaintiff failed to do so; the court concluded that this

precluded the ARB from issuing a final ruling on the appeal and, in turn, the inmate failed to exhaust his administrative remedies).

The administrative remedies applicable to the Plaintiff in the instant action are provided by 20 Ill. Admin. Rule § 504.800–870. Pursuant to the administrative rules, the Plaintiff was required to complete three clear steps in order to exhaust his available remedies:

> (1) attempt to resolve his complaint informally through his Counselor;
>
> (2) file a written grievance to the Grievance Officer within 60 days of discovery of his complaint; and
>
> (3) file an appeal to the Director within 30 days after the date of the decision with respect to his written grievance.

20 Ill. Admin. Rule § 504.810, § 504.850.

**C. Elements of a Claim for Deliberate Indifference Against an Individual**

The prisoner has the burden to demonstrate deliberate indifference to a serious medical need or condition, which is a significantly high burden to overcome. *Roe v. Elyea* 631 F.3d 843, 857 (7th Cir. 2011); *Hernandez v. Tex. Dept. of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004). A plaintiff must prove: (1) the existence of a serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

Individual liability under Section 1983, regardless of the constitutional theory, must be based upon personal responsibility. *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir. 1984). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a

constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). The defendant's personal involvement must be sufficient to permit a finding of liability. *Id.* at 992.

The plaintiff must establish that each of the defendants actually knew (independently and subjectively) that he needed treatment for a serious medical condition or risk but nevertheless <u>purposely</u> and <u>deliberately</u> withheld such treatment. *See Sellers*, 41 F.3d at 1102 (emphasis added). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir. 1985). Negligence, gross negligence, or even tortuous recklessness is not enough. *Id*. Unsuccessful medical treatment, neglect, medical malpractice, nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Berry v. Peterman,* 604 F.3d 435, 441 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 106). The Constitution does not prescribe any specific course of treatment. *See Jackson v. Kotter,* 541 F.3d 688, 697 (7th Cir. 2008) ("There is not one 'proper' way to practice medicine in a prison but rather a range of acceptable courses based on prevailing standards in the field.").

Deliberate indifference constitutes unnecessary and wanton infliction of pain, that is "repugnant to the conscience of mankind," or "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness." *Estelle*, 429 U.S. at 106–07. Deliberate indifference may be inferred "when the medical professionals decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such a judgment." *Estate of*

*Cole v. Pardue*, 94 F.3d 254, 261–62 (7th Cir. 1996); *see also Collingnon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). A defendant's response to a serious medical need must be so plainly inappropriate as to permit such an inference. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008).

### III. ARGUMENT

#### A. Plaintiff Failed to Exhaust His Administrative Remedies

As a threshold matter, Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit, as required by 42 U.S.C. § 1997(e)(a) and as set forth in 20 Ill. Admin. Rule § 504.800–870. Plaintiff's efforts to exhaust his administrative remedies were deficient in several respects. First, Plaintiff's April 11, 2014 grievance does not mention Dr. Obaisi or any deficient conduct on his part, and Plaintiff has not filed any grievances naming Dr. Obaisi. [Obaisi SOF ¶¶ 26, 33]. This is unsurprising, <u>since Plaintiff never had any medical appointments with Dr. Obaisi.</u> [*Id*. ¶ 4]. The Illinois Administrative Code requires that inmate grievances <u>shall</u> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. 20 Ill. Admin. Code § 504.810(b). Thus, Plaintiff's grievance was deficient in this respect, and literally does not address any acts or omissions on the part of Dr. Obaisi.

Second, Plaintiff's grievance was filed <u>before</u> he sought any medical care for the conditions he believed were caused by the soy in his prison-issued meals. Plaintiff filed his grievance regarding the soy in his meals on April 11, 2014. [Obaisi SOF ¶ 25]. Plaintiff forwarded his grievance directly to the IDOC's ARB on May 9, 2014. [*Id*. ¶¶ 27–28]. On May 13, 2014, Plaintiff saw Nurse Heather at SCC complaining of abdominal pain that he believed

was caused by the soy in his diet. [*Id*. ¶¶ 12–15]. Plaintiff's efforts to "pre-grieve" his medical care failed to adequately put the prison on notice of any deficiencies in his treatment—since no medical appointments had occurred when he filed his grievance.

Third, Plaintiff failed to follow the proper steps for exhausting his administrative remedies, and failed to provide the ARB with the information it needed in order to rule on his grievance. On April 11, 2014, Plaintiff filed an "emergency grievance." [Obaisi SOF ¶ 25]. The grievance was reviewed by SCC's Chief Administrator's Office and determined that Plaintiff's grievance was not an emergency. [*Id*. ¶ 27]. The CAO advised Plaintiff to resubmit the grievance in the normal manner. [*Id*.]. Despite being familiar with the grievance process, Plaintiff submitted his grievance directly to the ARB. [*Id*. ¶¶ 24, 27]. When the ARB reviewed Plaintiff's grievance, it determined that Plaintiff had skipped several steps in the grievance process. [*Id*. ¶¶ 28–30]. Specifically, the ARB needed a copy of the Offender's Grievance, DOC 0046, including his counselor's response, if any; and a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, in order to complete the appeal process. [*Id*.]. The ARB issued a Return of Grievance Form requesting the missing information. [*Id*. ¶ 29].

However, after reviewing the ARB's files, Plaintiff's ARB Chairperson determined that Plaintiff never sent the requested information. [Obaisi SOF ¶ 25]. Without this information, the ARB was unable to rule on the merits of Plaintiff's grievance. *See, e.g., Faysom v. Timm*, No. 04 C 8312, 2005 U.S. Dist. LEXIS 27860 (N.D. Ill. Nov. 9, 2005) (dismissing inmate's lawsuit where the ARB asked Plaintiff for additional information in order to process his appeal, including a copy of the grievance officer's response, but Plaintiff failed to do so; the court concluded that this precluded the ARB from issuing a final ruling on the appeal and, in turn, the

inmate failed to exhaust his administrative remedies). Therefore, Plaintiff's April 11, 2014 grievance remains indefinitely unexhausted.

Since Plaintiff failed to name Dr. Obaisi or provide the ARB with the information it needed, Plaintiff failed to exhaust his administrative remedies before filing this lawsuit, and Dr. Obaisi is entitled to summary judgment on that basis. Dismissal of Plaintiff's lawsuit for failing to exhaust his administrative remedies must be with prejudice, since it is now too late for Plaintiff to go back and start the grievance process over again. [Obaisi SOF ¶ 31]; *see, e.g., Pozo*, 286 F.3d at 1023-24; *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Hope v. Velasco*, No. 01 C 1574, 2004 WL 417198, *4 (N.D. Ill. Feb. 23, 2004) (Hibbler, J.). Further, Plaintiff is well beyond the 60-day window for filing a grievance. 20 Ill. Admin. Rule § 504.810, § 504.850. Therefore, summary judgment should be entered in favor of SALEH OBAISI, M.D.

**B. Dr. Obaisi Was Not Personally Involved in Plaintiff's Medical Treatment**

Assuming, *arguendo*, that Plaintiff exhausted his administrative remedies, no reasonable jury could conclude that Dr. Obaisi was directly and personally involved in a violation of Plaintiff's constitutional rights. It is undisputed that Dr. Obaisi did not see Plaintiff at any medical appointments, and therefore, was not involved in rendering any medical treatment to Plaintiff. [Obaisi SOF ¶ 4]. Indeed, Plaintiff's own testimony conclusively establishes that Plaintiff has never seen Dr. Obaisi, nor received any medical treatment from him. [*Id.*].

Moreover, Dr. Obaisi was unaware of Plaintiff's medical appointments, complaints, or medical conditions. [Obaisi SOF ¶ 4]. Dr. Obaisi was not aware that Plaintiff believed the soy in his meals was causing him to have medical complications. [*Id.* ¶ 5]. Dr. Obaisi did not receive any correspondence from Plaintiff about the soy content of the prison meals. [*Id.*].

Additionally, Dr. Obaisi has no control or authority over the meals that are served to inmates at SCC. [Obaisi SOF ¶ 6]. The IDOC controls and sets the diets for inmates, and only offers a

select number of "therapeutic" diets for inmates. [*Id*.]. Even though Plaintiff was prescribed a low soy diet by Dr. Martija on October 24, 2014, Dr. Obaisi had no control over whether or not the prison's dietary unit honored Dr. Martija's prescription. [*Id*. ¶ 23].

Summary judgment should be entered in favor of Dr. Obaisi because he literally has no involvement in Plaintiff's medical care. Individual liability under Section 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir. 1984). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). The focus must be on whether any of the defendants had the personal involvement necessary to permit a finding of liability. *Id.* at 992. Moreover, since Dr. Obaisi was unaware of Plaintiff's medical condition, complaints, or correspondence, Plaintiff cannot raise a genuine issue of material fact that Dr. Obaisi was acting with the requisite mindset during Plaintiff's time at SCC. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance*, 97 F.3d at 991. Thus, based on these undisputed facts, no reasonable jury could conclude that SALEH OBAISI, M.D. violated Plaintiff's constitutional rights, and therefore, summary judgment should be entered in his favor.

### C. Plaintiff Did Not Have a Serious Medical Condition

Even assuming, *arguendo*, that Plaintiff properly exhausted his administrative remedies, and that Dr. Obaisi was personally involved with Plaintiff's medical care, no reasonable jury could conclude that Plaintiff had an objectively serious medical condition. Without any basis in medicine or science, Plaintiff claims he developed "chronic and painful constipation alternating with debilitating diarrhea, hypothyroidism, brain fog, nasal congestion, acne, and depression" because of the soy in his meals. [Obaisi SOF ¶ 9]. On May 13, 2014, Plaintiff presented to the

nurse at sick call complaining of generalized abdominal pain, and heart burn / indigestion. [*Id*. ¶ 12]. According to the medical record, Plaintiff had abdominal pain "all over", stated that he felt "cold all over" and was experiencing constipation. [*Id.*]. Plaintiff told the nurse, Nurse Heather, that he believed the cause of his abdominal pain was the soy in his diet. [*Id.*].

However, on physical exam during the May 13, 2014 appointment, Plaintiff had a soft abdomen (indicating there were no masses or blockage), positive bowel sounds (meaning his bowels were moving and functioning normally). [Obaisi SOF ¶ 13]. Plaintiff was then provided an antacid (to settle his stomach) and Colace (a laxative). [*Id.*]. The nurse instructed Plaintiff to eat properly, drink plenty of fluids, and return to sick call if his conditions worsened. [*Id.*]. Plaintiff testified that the laxative and antacid resolved his constipation and heart burn. [*Id.*]. Plaintiff has not eaten the soy in his meals since that day. [*Id.*]. Plaintiff's "brain fog" cleared up immediately after the appointment with Nurse Heather. [*Id.* ¶ 11].

Plaintiff did not seek any further treatment for abdominal pain until October 7, 2014. [Obaisi SOF ¶ 16]. He described the pain as a "cramping", and informed the nurse that he had a bowel movement the previous evening. [*Id.*]. He denied seeing any bloody or black, tarry stool. [*Id.*]. He denied any nausea, vomiting, diarrhea, constipation, chest pain, shortness of breath, back pain, or weakness. [*Id.*]. Instead, Plaintiff said his pain was exacerbated by soy foods. [*Id.*]. On objective examination, Plaintiff appeared otherwise normal—his abdomen was normal, and there were active bowel sounds in all four quadrants (meaning his bowels were moving and functioning normally). [*Id.* ¶ 17]. On objective examination of Plaintiff's abdomen, he did not demonstrate any pain or tenderness, and he was not guarding his abdomen (indicating that his abdominal exam was completely normal). [*Id.*]. The nurse then advised Plaintiff to eat properly and drink plenty of water and return to sick call if his symptoms worsened. [*Id.*].

On October 24, 2014, Plaintiff was seen by a medical doctor, Dr. Martija. [Obaisi SOF ¶ 18]. Plaintiff complained to Dr. Martija about gas and bloating, which he claimed was due to a lot of fiber in his meals. [*Id.*]. On objective exam, Plaintiff's abdomen was soft, asymptomatic, without masses, and normal abdominal bowels sounds. [*Id.*]. Dr. Martija's assessment was that Plaintiff had increased flatulence. [*Id.*]. Dr. Martija prescribed Plaintiff a low soy diet for one year. [*Id.*]. Plaintiff had not been eating the soy in his meals up to that point. [*Id.*]. Plaintiff returned to the health care unit on several occasions after October 24, 2014, but Plaintiff did not seek any further medical treatment for abdominal pain, or any of the other issues he believed were caused by the soy in his meals. [*Id.* ¶ 19].

After reviewing Plaintiff's medical records, Dr. Obaisi does not believe that Plaintiff had a serious medical condition. [Obaisi SOF ¶ 20]. Despite Plaintiff's complaints about his abdomen, the objective examinations of Plaintiff's stomach were always normal. [*Id.*]. Also, Plaintiff did not return for nearly five (5) months between May 13, 2014 and October 7, 2014, indicating that his abdominal issues were not causing him pain or discomfort. [*Id.*]. After Plaintiff's October 24, 2014 appointment with Dr. Martija, Plaintiff did not seek any further medical treatment for his abdominal problems while he was at the Stateville Correctional Center, indicating that his alleged abdominal problems resolved. [*Id.*].

After reviewing Plaintiff's medical records, Dr. Obaisi does not believe that Plaintiff faced a serious risk of harm if he did not receive a soy-free diet. [Obaisi SOF ¶¶ 10, 22]. There is no indication from Plaintiff's medical record that he had a soy allergy. [*Id.*] There is no indication from Plaintiff's medical records that the soy in his diet was actually the cause of his alleged conditions. [*Id*]. There is no indication that Plaintiff had hypothyroidism, or the tell-tale signs of hypothyroidism, such as a goiter. [*Id.* ].

Unsurprisingly, Plaintiff's alleged medical conditions are the same as those allegedly suffered by other inmates complaining of the soy in their prison diets. *See Jefferson v. Fengolio*, No. 11-cv-0489 (S.D. Ill. Order of Dec. 17, 2013) (Hon. J. Williams). In *Jefferson*, the court properly concluded that the inmate did not have a serious medical condition, since his various conditions were too vague and unsubstantiated to meet the standard for a "serious medical condition." By analogy, this Court should dismiss Plaintiff's lawsuit because his alleged maladies were vague, unsubstantiated, and at worst, garden variety illnesses that do not require specific treatment, let alone illnesses that posed a serious risk of harm. This Court should not uncritically accept Plaintiff's claim about his alleged medical conditions. *Jackson v. Pollion*, 733 F.3d 786, 787 (7th Cir. 2013) (discouraging district courts from simply accepting that Plaintiff can present facts of a serious medical condition, and requiring District Courts to further investigate the medical evidence). No reasonable jury could conclude that Plaintiff had a serious medical condition, and summary judgment should be entered in favor of SALEH OBAISI, M.D.

### D. Plaintiff Does Not Have a Constitutional Right to a Soy-free Diet

Finally, Plaintiff has no constitutional right to a soy-free diet under the Fourteenth Amendment, nor does soy violate Plaintiff's Eighth Amendment rights. Other District Courts throughout the Seventh Circuit have held that inmates do not have a constitutional right to a soy-free diet. *See, Green v. Wexford Health Sources, Inc.*, No. 12-cv-50130, (N.D. Ill. July 6, 2015) (ECF #306); *Harris v. Brown,* No. 07-cv-3225, 2014 U.S. Dist. LEXIS 137870 at *4–15 (C.D. Ill. Sept. 30, 2014) (inmates have no constitutional right to soy free diet); *Riley-El v. Godinez*, No. 13-cv-8656, 2015 U.S. Dist. LEXIS 98567 at *10–14 (N.D. Ill. July 27, 2015) (citing *Harris* and granting defendants qualified immunity on soy-diet claim in ruling on Rule 12(b)(6) motion to dismiss); *Henley v. Aramark Corp.*, No. 15-cv-95, 2015 U.S. Dist. LEXIS 29470 at *1–3 (S.D.

39295/01245MHW/SJG

Ind. Mar. 10, 2015). Neither society nor the scientific or medical communities have determined that there is a severe risk to one's health associated with consuming soy. In fact, the United States government permits health claims about the benefits of soy to be made on food packages with soy food inside. *See* 21 C.F.R. § 101.82(c)(2)(iii)(A) and (e)(1). No one but Plaintiff believes he should receive a soy-free diet. Since, as a matter of law, inmates do not have a constitutional right to a soy-free diet, it follows that Dr. Obaisi (assuming he was involved in Plaintiff's medical treatment) cannot be held liable for violating a right Plaintiff does not have.

Additionally, Dr. Obaisi pled—and is entitled to—qualified immunity, which shields him from liability in this case. Under § 1983, a defendant is entitled to qualified immunity from money damages for his discretionary actions if his conduct does not violate any clearly-established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). The burden of establishing the existence of such a clearly established constitutional right is on plaintiff. *McGrath v. Gillis*, 44 F.3d 567, 570 (7th Cir. 1995). Plaintiff must point out a closely analogous case that establishes that he had a right to be free from the specific conduct alleged to violate the general constitutional right at issue. *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993). Plaintiff must also establish that the alleged violated rights were so clear that a reasonable official would understand that what he is doing at the time violates the right. *McGrath*, 44 F.3d at 570. Since Plaintiff does not have a constitutional right to a soy-free diet, there was no "clearly-established constitutional right" for Dr. Obaisi to violate. Therefore, Dr. Obaisi is entitled to qualified immunity, and summary judgment should be entered in favor of SALEH OBAISI, M.D.

WHEREFORE, Defendant SALEH OBAISI, M.D., respectfully requests that this Honorable Court enter summary judgment in his favor pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, and grant such relief as this Court deems equitable and just.

39295/01245MHW/SJG

                                                            Respectfully submitted,

                                                            CASSIDAY SCHADE LLP

                                                            By: <u>s/ Stephen J. Gorski</u>
                                                                 One of the Attorneys for Defendant,
                                                                 SALEH OBAISI, M.D.

Matthew H. Weller
Stephen J. Gorski
CASSIDAY SCHADE LLP
120 W. State Street – Suite 401
Rockford, IL 61101
(815) 962-8301
(815) 962-8401 – Fax
mweller@cassiday.com
sgorski@cassiday.com

39295/01245MHW/SJG

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2016, I electronically filed the foregoing document with the clerk of the court for Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case. I further caused a true and correct copy of Saleh Obaisi, M.D.'s Memorandum of Law in Support of Summary Judgment to be served on Plaintiff by U.S. Mail as follows:

Pro Se:
Stephen J. Turvey, IDOC #S11978
Lawrence Correctional Center
10940 Lawrence Road
Sumner, IL 62466

Illinois Department of Corrections
100 West Randolph Street, Suite 4-200
Chicago, IL 60601

Dated: March 14, 2016                                       By: /s/Stephen J. Gorski

Matthew H. Weller
Stephen J. Gorski
CASSIDAY SCHADE LLP
120 West State Street, Suite 401
Rockford, IL 61101
(815) 962-8301
(815) 962-8401 – fax