# EXHIBIT 1

## *Hope v. Velasco*

United States District Court for the Northern District of Illinois, Eastern Division

February 20, 2004, Decided ; February 23, 2004, Docketed

Case No. 01 C 1574

**Reporter**

2004 U.S. Dist. LEXIS 2780; 2004 WL 417198

EDGAR HOPE, Plaintiff, v. ERNESTO VELASCO, et al., Defendants.

**Disposition:** [*1] Defendants' Motion for Summary Judgment granted.

**Counsel:** For EDGAR HOPE, JR, plaintiff: Darryl E. Robinson, London, Robinson & Best, Chicago, IL. John Fitzgerald Lyke, Kathleen Ann Moriarty, Law Office of John Fitzgerald Lyke, Chicago, IL.

For ERNESTO VELASCO, Executive Director of Cook County Jail, CAPT DAVIS, CORR OFC TURRISE, # 7591, defendants: John A. Ouska, Patrick Stephen Smith, Cook County State's Attorney, Chicago, IL.

**Judges:** The Honorable William J. Hibbler, United States District Judge.

**Opinion by:** William J. Hibbler

# Opinion

### MEMORANDUM OPINION AND ORDER

Edgar Hope, an inmate currently incarcerated at Cook County Jail, filed this *§ 1983* complaint against Officers Davis and Perkins and Captain Turrise for assault, battery, and violation of his *Eighth* and *Fourteenth Amendment* rights; and against Director of the Cook County Department of Corrections, Ernesto Velasco, in his official capacity (collectively, "Defendants"), for failing to take steps to prevent such alleged beatings from occurring. Before this Court is Defendants' Motion for Summary Judgment, which is based on two grounds: (1) that Hope failed to exhaust his administrative remedies; and (2) that Defendants are protected [*2] by qualified immunity.

### I. FACTS

At the time of the alleged *§ 1983* violation, Hope was an inmate at Cook County jail, and Defendants were employed by the Cook County Department of Corrections ("CCDOC") at that facility. Hope claims that Officer Perkins attacked him on March 7, 2000, without provocation, while Hope was on an hour long break outside of his cell, conversing with his attorney on the telephone. Hope further alleges that Officer Turrise and Captain Davis joined Officer Perkins in the fight, beating, kicking and punching Hope multiple times while holding him down. Hope states that another inmate, Randall Jarrett, intervened on his behalf. Hope alleges that the officers inflicted multiple injuries for which he received medical care.

On approximately March 9 or 10, 2000, Hope and Jarrett filed a detainee grievance with the CCDOC, requesting an internal investigation and an investigation by the Federal Bureau of Investigation. The Cook County Sheriff's Department promptly complied with an internal investigation and found that "none of the officers or supervisors admitted abusing either of the two inmates in that they only used force which was necessary to restrain [*3] the inmates and place them in their cells." On April 5, 2000, after reviewing all documents and statements, the Sheriff's Department concluded that the allegations brought against the accused were unfounded. Hope states that the investigation was conducted to his satisfaction. Instead of appealing the results of the Sheriff's Department's investigation internally, Hope brought this complaint.

### II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, and other materials in the record show that there is no disputed issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. Summary judgment may be granted when the record as a whole shows that a rational trier of fact could not find for the non-moving party. *Rogers v. City of Chi., 320 F.3d 748, 752 (7th Cir. 2003)*. The non-moving party must make a showing sufficient to establish any

essential element for which he will bear the burden of proof at trial. *Celotex, 477 U.S. at 322-23.* [*4] The Court considers the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1057 (7th Cir. 2000).*

## III. EXHAUSTION

Defendants assert that Hope's claims should be dismissed because he failed to exhaust his administrative remedies before filing suit. Hope is required to exhaust all administrative remedies before filing suit in federal court under the Prison Litigation Reform Act of 1995 ("PLRA"). In relevant part, the PLRA provides that "no action shall be brought with respect to prison conditions under **section 1983** of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *42 U.S.C. § 1997e(a).*

The Seventh Circuit has held that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002).* The CCDOC's Detainee Grievance Procedures ("Grievance Procedures"), [*5] which include procedures for appeal, went into effect in 1997. The Grievance Procedures provide that detainees wishing to file a grievance shall fill out an Inmate Grievance Form and place it in the designated locked box within 15 days after the alleged grievance occurred. The grievance must be resolved within 30 days from the date the grievance was filed. If a detainee wishes to appeal the decision, he or she has five working days from receipt of the decision to appeal to the Administrator of Program Services or his designee. All appeal decisions are final. *Pozo, 286 F.3d at 1025.* It is uncontested that Hope filed a timely grievance with the CCDOC, that the CCDOC provided a timely response to Hope's grievance, and that Hope chose not to file an appeal. Defendants argue that this failure to file an appeal should result in a dismissal of Hope's complaint.

In response, Hope makes two arguments. First, Hope argues that because an appeal is optional under the Grievance Procedures -- "if a detainee wishes to appeal," he was not required to appeal in order to exhaust his administrative remedies. Hope misinterprets the permissive language contained in the Grievance Procedures. [*6] The use of the word "wishes" does not

make the appeals process optional for those who wish to contest the results of the internal investigation; rather, it distinguishes those who wish to appeal and exhaust their remedies from those who are either satisfied with the CCDOC's response or choose not to pursue their claim. The Seventh Circuit has held that in order to exhaust administrative remedies for the purposes of complying with the PLRA, the aggrieved detainee must use *all* steps that the agency makes available, including the appeals process. *Pozo, 286 F.3d at 1025* (emphasis added). *See also Dixon v. Page, 291 F.3d 485, 489 (7th Cir. 2002)* (where grievance procedure allowed prisoners to appeal, prisoner's failure to appeal denial of relief represented a failure to exhaust). Detainees cannot selectively participate in the grievance process; instead, they must use all available avenues of review in order to exhaust. *Pozo, 286 F.3d at 1024.* If detainees are not satisfied with the CCDOC's response to their grievance, they must appeal to the CCDOC before bringing their suit to federal court.

Second, Hope argues that because the CCDOC [*7] provided him with the relief that he sought -- an internal investigation -- he had no reason to appeal. In his grievance, Hope requested only an internal investigation of the events that led to his injuries. The CCDOC conducted the investigation and concluded that "the allegations . . . being brought against the accused [are] unfounded." In his affidavit, Hope stated that he was satisfied that this investigation had been conducted, and Hope argues that because the investigation was performed to his satisfaction, he had no reason to appeal the CCDOC decision at the time. However, Hope's argument that he need not appeal because he was satisfied "that the investigation was performed" is unavailing. The Supreme Court has held that under the PLRA, detainees cannot skirt the administrative review process by strategically structuring the relief they seek. *Booth v. Churner, 532 U.S. 731, 739, 149 L. Ed. 2d 958, 121 S. Ct. 1819 (2001)* (stating that it is "highly implausible that [the PLRA] meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers of relief . . . not offered through administrative grievance mechanisms"). Because Hope is not [*8] satisfied with the conclusions of the internal investigation, he is required to appeal his grievance internally before bringing his claim to federal court.

Furthermore, Hope is not exempted from the exhaustion requirement even though he is only seeking money damages for his injuries. The Supreme Court has held

2004 U.S. Dist. LEXIS 2780, *8

that "even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." _Porter v. Nussle, 534 U.S. 516, 524, 152 L. Ed. 2d 12, 122 S. Ct. 983 (2002)_. The results of prison grievance procedures might "affect the quantum of damages available in litigation." _Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 538_. Thus, "an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief," even if not money. _Booth, 532 U.S. at 734_. "Some sort of relief" includes:

> In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately [*9] brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

_Porter, 534 U.S. at 525_ (citing _Booth, 532 U.S. at 737_). In Hope's case, the CCDOC appeals process could have provided him with this sort of non-monetary relief. Had Hope filed an appeal and received no response or relief, then he could have demonstrated that there was no possibility for relief. _Dixon, 291 F.3d at 491_. Hope, however, has failed to demonstrate that the CCDOC lacked the authority "to provide any relief or to take any action whatsoever" in response to his appeal. _Booth, 532 U.S. at 736_.

In addition, Hope's lawsuit does not fall under a recognized exception to the exhaustion requirement. The Seventh Circuit has recognized an exception to the exhaustion requirement where: (1) the administrative board failed to respond to the prisoner's grievance, _Lewis v. Washington, 300 F.3d 829 (7th Cir. 2002)_; and (2) no remedy is available through the administrative process, _Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 537-38 (7th Cir. 1999)_. [*10] Hope, however, does not allege that the CCDOC failed to respond to his grievance or that a remedy or appeals process was unavailable, insufficient or faulty. He also does not claim that the grievance process was a sham used to thwart his good faith attempts to achieve full exhaustion. The Grievance Procedures, which Hope cites as evidence, indicate that the procedures became effective in 1997 and include a process for administrative appeals. In addition, Hope agrees with Defendants that the CCDOC

complied with Hope's request for an investigation in a timely and appropriate manner. Therefore, Hope's lawsuit must be dismissed for failure to exhaust his administrative remedies.

## IV. SCOPE OF DISMISSAL

"Dismissal for failure to exhaust is without prejudice and so does not bar the reinstatement of the suit _unless it is too late to exhaust._" _Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002)_ (emphasis added). Because _42 U.S.C. § 1997e(a)_ prohibits a prisoner from bringing suit without exhausting state remedies, if exhaustion is no longer possible then the suit is barred. _Robinson v. United States, 80 Fed. Appx. 494, 2003 WL 22598335, [*11] at *5 (7th Cir., 2003)_. When the time limits of the internal grievance process have been surpassed, exhaustion becomes impossible. _Id. See also Glisson v. U.S. Forest Service, 55 F.3d 1325, 1326 (7th Cir. 1995)_ (case dismissed with prejudice because it was too late for Glisson to cure problem that had caused the dismissal by exhausting those remedies since he failed to file a timely appeal to the Regional Forester). The Seventh Circuit has held this defect is a procedural default which must be dismissed with prejudice. _Robinson, 80 Fed. Appx. 494, 2003 WL 22598335, at *5_. In this case, if Hope wanted to appeal the CCDOC's decision, he had five working days from receipt of the decision to appeal to the Administrator of Program Services or his designee. As Hope received the decision as to his initial grievance on April 5, 2000, he has far exceeded his time limit to appeal, and Hope cannot cure the defect in his case.

## V. CONCLUSION

For the foregoing reasons, the Court need not reach Defendants' qualified immunity argument, and the Court GRANTS Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

2/20/04

Dated

The Honorable William J. Hibbler

[*12] United States District Court:

## JUDGMENT IN A CIVIL CASE

Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

2004 U.S. Dist. LEXIS 2780, *12

IT IS HEREBY ORDERED AND ADJUDGED that        Date: 2/20/2004
judgment is entered in favor of defendants and against
plaintiff.

## *Faysom v. Timm*

United States District Court for the Northern District of Illinois, Eastern Division

November 9, 2005, Decided ; November 9, 2005, Filed

No. 04 C 8312

**Reporter**

2005 U.S. Dist. LEXIS 27860; 2005 WL 3050627

DAVID FAYSOM, Plaintiff, vs. PAULETTE TIMM, et al., Defendants.

**Subsequent History:** Summary judgment granted, in part, summary judgment denied, in part by *Faysom v. Aguinaldo, 2008 U.S. Dist. LEXIS 99110 (N.D. Ill., Dec. 8, 2008)*

**Counsel:** [*1] For David Faysom, Plaintiff: Mark Howard Boyle, Nicholas L Lopuszynski, Donohue, Brown, Mathewson & Smyth, Chicago, IL.

For Evaristo P Aguinaldo, Jr M.D., Defendant: David H. Schroeder, Charysh & Schroeder, Ltd., Chicago, IL.

For Parthasarathi Ghosh M.D., Kevin S Smith M.D., Andrew H Tilden M.D., Defendants: David H. Schroeder, Christopher E Walter, Charysh & Schroeder, Ltd., Chicago, IL.

**Judges:** Magistrate Judge Schenkier.

**Opinion by:** SIDNEY I. SCHENKIER

# Opinion

## MEMORANDUM OPINION AND ORDER

[1]

In this lawsuit brought under *42 U.S.C. § 1983*, plaintiff -- who at all relevant times has been incarcerated at Stateville Correctional Center, a facility within the Illinois Department of Corrections ("IDOC") -- asserts claims that the defendants all were deliberately indifferent [*2] to his serious medical needs in connection with the diagnosis and treatment of a brain tumor. In his second amended complaint, plaintiff asserts that he has exhausted the prison's formal grievance process, and attaches two exhibits to support that assertion (*see*

Second Am. Compl. PP 134-35 and Exs. A-B). Defendants have filed a motion to dismiss plaintiff's second amended complaint (doc. # 49), asserting two grounds for dismissal: *first,* that plaintiff's initial grievance was untimely; and *second,* that even assuming the grievance process was timely initiated, it was never exhausted as of the time plaintiff filed suit. For the reasons set forth below, we conclude that the timeliness argument has been waived, but that the grievance process has not been concluded. Accordingly, for this latter reason, the Court grants defendants' motion to dismiss due to plaintiff's failure to exhaust his administrative remedies.

I.

Defendants assert that plaintiff's initial grievance "was not timely filed pursuant to *ILL. ADMIN. CODE TIT. 20 § 504.810 (2005)*, as it was filed more than 60 days after the dates of the incidents giving rise to the plaintiff's grievance" -- 277 days after [*3] he had brain surgery for a brain tumor, or March 31, 2003 (Defs.' Mot., PP 4-5). In response, plaintiff argues that "state officials did not reject Mr. Faysom's grievance as untimely. Each part of the grievance process, . . . establishes a denial of Mr. Faysom's grievance on its merits" (Pl.'s Resp., at 10).

The Illinois Administrative Code states in relevant part: "A grievance shall be filed within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. However, if an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." *ILL. ADMIN. CODE TIT. 20 § 504.810 (2005)*.

The Seventh Circuit has held that under *42 U.S.C. § 1997e(a)*, part of the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust administrative remedies prior to filing suit. The Seventh Circuit has held that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time,

---

[1] Pursuant to consent of all the parties (doc. # 72) and *28 U.S.C. § 636(c)*, on September 23, 2005, the case was reassigned to this Court to conduct all proceedings and to enter final judgment.

2005 U.S. Dist. LEXIS 27860, *4

the prison's administrative rules require." *Pozo v. Mc-Caughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)*. However, on the issue of timeliness, "when a state treats a filing [*4] as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action." *Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004)* (citing *Pozo v. Mc-Caughtry, 286 F.3d 1022, 1025 (7th Cir. 2002))*. In other words, if the state administrative system denies a grievance on the merits, rather than because it was too late, then the court presumes that the state has waived the procedural default for good cause and treated the grievance as timely.

Accepting plaintiff's allegations as true, as we must do when considering a motion to dismiss, *Sprint Spectrum L.P. v. City of Carmel, 361 F.3d 998, 1001 (7th Cir. 2004)*, on January 13, 2004, plaintiff "began a formal grievance process with Stateville Corrections Center prison officials regarding his past and present [medical] condition and treatment" between 2001 and March 2003 (Second Am. Compl., P 34). A copy of plaintiff's initial grievance is attached to his complaint as Exhibit A. In this grievance, there is a "Counselor's Response" dated January 21, 2004 (Ex. A, p. 1), and [*5] a determination by a grievance officer, who denied the grievance requests for transfer and monetary compensation on March 15, 2004 (*Id.*, p.2). There is also a concurring response from the Chief Administrative Officer, dated March 17, 2004 (*Id.*), and, finally, plaintiff's "appeal to the director" dated April 1, 2004 (*Id.*).

Under FED.R.CIV.P. 10(c), documents attached to the complaint are incorporated into the complaint by reference "if they are referred to in the plaintiff's complaint and are *central* to his claim." *Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998)* (emphasis in original) (quoting *Wright v. Associated Ins. Cos., 29 F.3d 1244, 1248 (7th Cir. 1994)*); *see also Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 731 n.3 (7th Cir. 2005)*. Here, the grievance exhibits are attached to the complaint and referred to in it (*see* Second Am. Compl. P 34, Ex. A), and are central to plaintiff's claim of

administrative exhaustion. Thus, we treat the grievance exhibits as part of the complaint. The grievance exhibits show that the state administrative system ruled [*6] on the merits of plaintiff's initial grievance, rather than standing by the 60-day rule. Therefore, under the holdings of *Riccardo* and *Pozo*, this Court finds that defendants' timeliness argument has been waived. [2]

[*7] **II.**

Defendants stand on much firmer footing with their exhaustion argument. Although plaintiff has pled that he exhausted all administrative remedies, the Seventh Circuit has observed that a plaintiff may "plead himself out of court" by including allegations that defeat his claim. *Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753-754 (7th Cir. 2002)*. That is just what plaintiff did here when he attached the grievance exhibit (Second Am. Compl., Ex. B) that shows the Administrative Review Board ("ARB") did not decide his final administrative appeal. Plaintiff's appeal to the ARB indicates that it was "received" by the ARB on April 15, 2004, reviewed, and returned to plaintiff with a request for "additional information." In particular, the ARB asked plaintiff to clarify whether he was grieving his medical case, stating that he could not transfer due to a medical hold. The ARB asked that, if plaintiff was grieving his medical case, he "be more specific" and provide a copy of his grievance and his grievance report.

We agree that this ARB document, which we treat as part of the complaint, *see Levenstein, 164 F.3d at 347*, makes it clear [*8] that the ARB had made no final decision as of the time plaintiff filed this suit. The ARB's request checks a box with an address to which plaintiff was directed to send the requested documents, states that the ARB was "unable to determine nature of grievance," and asked plaintiff in handwriting to "be more specific and get" the requested documents: specifically, the "Committed Person's Grievance Report, DOC 0047" and "the Committed Person's Grievance, DOC 0046." No reasonable person could construe the ARB document as anything other than a request for additional information. The arguments plaintiff offers to avoid this conclusion are unavailing.

---

[2]   As we explain below, the grievance process never was completed because the Administrative Review Board never made a determination of plaintiff's final administrative appeal. Defendants seize on this point to argue that if the Board made a determination, it might have declined to reach the merits and might simply have denied the grievance as untimely (Defs.' Reply at 4). We do not find this argument tenable in light of the fact that the Board's initial response to the appeal was to request information: not to dismiss the grievance as untimely, which it could have done without seeking more information. Moreover, defendants have offered no explanation for why the Board would have ruled on the timeliness ground when neither the Grievance Officer or the Chief Administrative Office did so at the initial levels of review.

*First,* plaintiff argues that the ARB made a final determination of plaintiff's grievance seeking a transfer by saying that it was unavailable (Pl.'s Resp. at 14). However, the ARB inquiry indicates that the ARB was unclear whether plaintiff was appealing the transfer denial. The ARB's comment may have been calculated to discourage an appeal of that point, but in the absence of clarification by plaintiff, we decline to treat that comment as a ruling. What is more, even construing the ARB's comment as plaintiff asks us to do, at most that [*9] was a denial of a transfer request; it was not a denial of a medical case grievance. And, the only issue pled in this suit is in connection with plaintiff's medical care.

*Second,* plaintiff argues that his actions were sufficient to "alert[] the state" to his grievance and to "invite[] corrective action," and thus should be considered sufficient to satisfy the exhaustion requirement (Pl.'s Resp. at 13, 14). However, accepting plaintiff's argument would transform the requirement of full exhaustion into one of partial exhaustion. We are not permitted to rewrite the PLRA in that fashion. *See Lewis v. Washington, 300 F.3d 829, 833-34 (7th Cir. 2002)* (rejecting argument that the exhaustion requirement is met by "substantial compliance").

Plaintiff's failure to exhaust his administrative remedies requires dismissal under *Section 1997e(a) of the PLRA*; but, the dismissal is without prejudice. *Perez v. Wis. Dept. of Corr., 182 F.3d 532 (7th Cir. 1999); Ford v. Johnson, 362 F.3d 395, 398, 401 (7th Cir. 2004)* ("*Section 1997e(a)* says that exhaustion must precede litigation";"*all* dismissals under *§ 1997e(a)* should be without prejudice"). [*10] The fact that our dismissal is without prejudice is significant for two reasons. *First,* plaintiff can seek a final decision from the ARB, and then, if unsatisfied, can refile his lawsuit in federal court. *Second,* if plaintiff cannot obtain a final decision from the ARB, he can then refile his lawsuit alleging that his failure to exhaust should be excused under the "futility" doctrine. On this second point, the Seventh Circuit has held that the exhaustion requirement is satisfied if a

prisoner can show that administrative remedies were not "available" because prison officials failed to respond to the prisoner's grievance; in other words, prison officials may not "exploit the exhaustion requirement through indefinite delay in responding to grievances." *Lewis, 300 F.3d at 833.*

Finally, we note that prior to the 2003 amendment of *ILL.ADMIN.CODE TIT. 20, § 504.850 (2005),* the Code delineated time limits for the ARB to submit to the Director a written report of its findings and recommendation (*i.e.,* 60 days), and for the Director to review those findings and make a final determination (*i.e.,* 15 days). *See, e.g., Goodman v. Carter, 2001 U.S. Dist. LEXIS 9213, No. 00 C 948, 2001 WL 755137, at * 3 (N.D. Ill. July 2, 2001)* [*11] (finding administrative remedies exhausted because IDOC officials did not respond to grievance within time frame set forth in *§ 504.850(d)*). Now, the Code simply states that the ARB must make a final determination within six months "where reasonably feasible under the circumstances." *Id., § 504.850(f).* Without a specific statutory time limit in place, the legal determination of what the phrase "indefinite delay" -- as used by the Seventh Circuit in *Lewis* -- is not subject to a precise formula. In any event, this Court has no occasion to rule on that question on the present state of the record. [3]

[*12] **CONCLUSION**

For the foregoing reasons, the Court grants the defendants' motion to dismiss (doc. # 49-1), and dismisses plaintiff's second amended complaint without prejudice.

**ENTER:**

**SIDNEY I. SCHENKIER**

**United States Magistrate Judge**

**Dated: November 9, 2005**

---

[3]    We further note that the grievance exhibits raise questions that have not been answered. For example, the ARB request to plaintiff for information is dated March 14 or 19, 2004 (the legibility of the handwriting makes the precise date uncertain) — which cannot be right, since the appeal was not received by the ARB until April 15, 2004. Defendant's motion simply states that the date of the request was May 14, 2004 (Defs.' Motion at P 7), without explaining the basis for that "correction." In addition, we are puzzled about the ARB's request for the grievance and grievance report (Sec. Am. Compl., Ex. B), when the copies of those documents attached to the complaint bear a stamp stating "RECEIVED April 15, 2004, OFFICE OF INMATE ISSUES" (*Id.,* Ex. A). That stamp suggests that these documents were in the possession of at least some department of IDOC, and thus available to the ARB as of the date it received the grievance appeal. We do not pass on the significance *vel non* of these points, but only offer them for consideration of the parties as plaintiff seeks to obtain a final determination of the ARB.

2005 U.S. Dist. LEXIS 27860, *12

**JUDGMENT IN A CIVIL CASE**     Date: 11/10/2005

Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Judgment is entered in favor of the defendants, and against the plaintiff, David Faysom.

## *Santiago v. Snyder*

United States Court of Appeals for the Seventh Circuit

October 4, 2006, Argued ; November 20, 2006, Decided

No. 04-2099

**Reporter**
211 Fed. Appx. 478; 2006 U.S. App. LEXIS 28862

ANIBAL SANTIAGO, Plaintiff-Appellant, v. DONALD SNYDER, et al., Defendants-Appellees.

**Notice:** [**1] RULES OF THE SEVENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**Subsequent History:** Rehearing denied by *Santiago v. Snyder, 2007 U.S. App. LEXIS 1979 (7th Cir. Ill., Jan. 12, 2007)*

**Prior History:** Appeal from the United States District Court for the Southern District of Illinois. No. 02-1060-GPM. G. Patrick Murphy, Chief Judge.

**Counsel:** For ANIBAL SANTIAGO, Plaintiff-Appellant: Alan S. Mills, Chicago, IL, USA.

For DONALD N. SNYDER, JR., Director, MICHAEL V. NEAL, DWAYNE A. CLARK, Warden, ROGER D. COWAN, Warden, THOMAS F. PAGE, Warden, Defendant-Appellee: Gary S. Feinerman, OFFICE OF THE ATTORNEY GENERAL, Chicago, IL, USA.

**Judges:** Before Hon. JOHN L. COFFEY, Circuit Judge, Hon. TERENCE T. EVANS, Circuit Judge, Hon. ANN CLAIRE WILLIAMS, Circuit Judge.

## Opinion

[*479] **ORDER**

Illinois state prisoner Anibal Santiago was charged with conspiring to assault prison personnel and transferred to a super-maximum security facility, Tamms Correctional Center, during the resolution of those charges. Santiago sued under *42 U.S.C. § 1983*, alleging that his transfer was a form of retaliation for his prior grievances and his wife's outspoken criticism of the Illinois prison system. Santiago, however, waited [**2] eight months after his transfer before he pursued

administrative remedies, and an additional twenty-three months passed between the time he exhausted those remedies and filed this suit. The district court granted summary judgment for the defendants because Santiago failed to bring this suit within the applicable two-year statute of limitations in Illinois. On appeal, Santiago argues that the statute of limitations should have been tolled during the eight months that he tried to resolve his grievances informally before initiating administrative proceedings. Because only formal exhaustion can toll the statute of limitations, we affirm the judgment of the district court.

Before being transferred to Tamms, Santiago was serving out his sentence at Menard Correctional Center. While at Menard, Santiago was informed in July 1999 that he was charged with conspiracy to assault prison personnel and participation in other gang activity. In a letter he responded to the charges, insisting upon his innocence and stating that the behavior for which he was charged was nothing more than group prayer with fellow inmates in the exercise yard. He also alluded to retaliation: "I have filed specific grievances, [**3] which is no reason for any reprisals to be taken against me."

On August 4, Santiago was transferred to Tamms, where disciplinary proceedings were held on his conspiracy charges. During these proceedings he presented evidence to the adjustment committee in his defense. He also wrote separately to two deputy directors of the prison system asserting that both the charges against him and his transfer to Tamms were retaliatory. A third deputy director responded to [*480] his letters by noting that Santiago's disciplinary procedures were still unresolved. Eventually, in November 1999 the adjustment committee at Tamms found Santiago guilty of the conspiracy charges.

In April 2000 -- eight months after his transfer to Tamms -- Santiago filed a formal grievance challenging his transfer to Tamms and the adjustment committee's decision. Eventually he exhausted his administrative remedies, and 23 months later, in October 2002, he filed this case.

211 Fed. Appx. 478, *480; 2006 U.S. App. LEXIS 28862, **4

Santiago argues that the district court should have tolled the statute of limitations controlling his *§ 1983* action not only during the time period that he exhausted formal administrative procedures (April -- November 2000) but also during the prior eight [**4] months during which he pursued informal means of resolving his grievance. Santiago argues that his letters to prison officials and his defense at his disciplinary proceedings substantively resembled formal grievance procedures, and as such, satisfy the purposes of exhaustion, making them the type of actions for which the limitations period should be tolled.

The statute of limitations, however, is tolled only while the plaintiff seeks to exhaust his administrative remedies. *Johnson v. Rivera, 272 F.3d 519, 521-22 (7th Cir. 2001).* We have taken a "strict compliance approach" to what qualifies as exhaustion. *Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).* The prisoner must follow formal procedures in the place and at the time that the prison's administrative rules require. *Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005); see also 20 Ill. Adm. Code §§ 504.80, 504.810* (outlining grievance procedure for offenders). Because exhaustion requires compliance with the prison's administrative procedures, the prisoner can exhaust his administrative remedies only through the completion of such procedures. *Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002);* [**5] *see Dole, 438 F.3d at 809; Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005); McCoy v. Gilbert, 270 F.3d 503, 510 (7th Cir. 2002).* Santiago, however, did not comply with formal grievance procedures, and thus the district court was correct not to toll the limitations period.

Santiago also argues that the statute of limitations should have been tolled because its purpose is to ensure that defendants have notice of pending claims, and here he apprised the prison of his claims through his letters to prison officials and his defense before the adjustment committee. But tolling in the prison context serves to prevent prisoners' suits from becoming untimely while the prisoners pursue mandatory administrative procedures. *Johnson, 272 F.3d at 522.* Because Santiago eschewed these mandatory procedures, tolling is not available to him. *See Pozo, 286 F.3d at 1023.*

Santiago next argues that the plain language of the Illinois tolling statute, *735 ILCS 5/13-216,* requires that the statute of limitations be tolled from the time of his alleged injury until the time when he exhausted [**6] administrative remedies. *Section 13-216* tolls the statute of limitations when a claim is "statutorily prohibited," and the Prison Litigation Reform Act prohibits prisoners from filing suit under *§ 1983* unless they first exhaust administrative remedies, *see 42 U.S.C. § 1997e(a).* But this is the same statutory language that we considered in *Johnson,* in which we held that the statute is tolled only while the prisoner exhausts his administrative remedies. *272 F.3d at 522.* Santiago identifies no authority or reason to disturb our interpretation of the statute in *Johnson.*

Santiago next asserts that he was confused about the grievance procedures and thought that he had to complete his disciplinary proceedings for the conspiracy charges before he could formally grieve his [*481] transfer. But Santiago's transfer was a distinct occurrence and injury, separate from the outcome of the disciplinary proceedings, and he should have grieved it immediately. *Cannon, 418 F.3d at 718* (the statute of limitations begins to run at the time an injury is discovered). Furthermore, to the extent he attributes his confusion to the letter from the [**7] deputy director, that letter did not suggest anything about the grievance procedures he should pursue, and it should not have been the cause of any confusion.

Finally, Santiago for the first time raises three additional arguments: 1) that his claims were not ripe until after he exhausted administrative remedies and so the statute of limitations should begin to run at that time; 2) that an Illinois statute provided him with a year to refile this case after his dismissal from another lawsuit of identical subject matter; and 3) that the statute of limitations should be equitably tolled. By not raising these arguments in the district court, Santiago has forfeited them. *See, e.g., Witte v. Wis. Dep't. of Corr., 434 F.3d 1031, 1038 (7th Cir. 2006); Racine Charter One, Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 684 n.2 (7th Cir. 2005).*

The judgment of the district court is AFFIRMED.

## *Chess v. Pindelski*

United States District Court for the Northern District of Illinois, Eastern Division

January 23, 2009, Decided; January 23, 2009, Filed

Case No. 07 C 5333

**Reporter**
2009 U.S. Dist. LEXIS 4685; 2009 WL 174992

Joseph Chess (# 22273-424), Plaintiff, v. John Pindelski, Defendant.

**Subsequent History:** Motion denied by *Chess v. Pindelski, 2010 U.S. Dist. LEXIS 3141 (N.D. Ill., Jan. 15, 2010)*

**Counsel:** [*1] Joseph Chess, Plaintiff, Pro se, Chicago, IL.

For Bureau of Prisons, John Pindelski, Jason Dana, Richard Nieberding, Daniel Greenstein, Defendants: Samuel S. Miller, LEAD ATTORNEY, AUSA, United States Attorney's Office (NDIL), Chicago, IL.

For Jerome Adams, United States of America, Defendants: AUSA, United States Attorney's Office (NDIL), Chicago, IL.

**Judges:** Wayne R. Andersen, United States District Court Judge.

**Opinion by:** Wayne R. Andersen

# Opinion

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Chess, a federal prisoner incarcerated at the Metropolitan Correctional Center (MCC), filed this civil rights action against MCC officers and psychologists John Pindelski, Jason Dana, Richard Nieberding, and Daniel Greenstein. Plaintiff also named as Defendants Jerome Adams, a fellow inmate, and either the Bureau of Prisons or the United States of America. Summonses were issued and served on only the individual MCC officers and psychologists. Plaintiff alleges that, on February 6, 2007, Adams poured scalding water on Plaintiff; Plaintiff suffered severe burns to his face, neck, eye, and ear; and the MCC Defendants knew that Adams was mentally unstable and dangerous, yet allowed him to be housed in general population. On August [*2] 20, 2008, the Court denied Defendants'

motion to dismiss the complaint for failure to exhaust administrative remedies, noting that a Fed. R. Civ. P. 12(b) dismissal was improper in light of *Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007)*, and because the failure-to-exhaust issue required consideration of materials outside the complaint. The Defendants have since filed a motion for summary judgment, again arguing that Plaintiff failed to exhaust administrative remedies. Plaintiff has filed a response, and the Defendants have replied.

For the following reasons, the motion for summary judgment is granted; however, the case is not dismissed. The MCC Defendants are dismissed, but the Court construes Plaintiff's claims against the BOP and the United States as naming the United States as a Defendant. Plaintiff may proceed with his claim against the United States of America, and the clerk shall issue summons for this Defendant.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment [*3] as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*; *Spath v. Hayes Wheels Int'l-Ind., Inc., 211 F.3d 392, 396 (7th Cir. 2000)*. In determining the existence of a genuine issue of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. When addressing a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id. at 255*.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and

2009 U.S. Dist. LEXIS 4685, *4

affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." _Borello v. Allison, 446 F.3d 742, 748 (7th Cir. 2006)_ (internal quotation marks and citations omitted); _Celotex, 477 U.S. at 322-26_; _Johnson v. City of Fort Wayne, 91 F.3d 922, 931 (7th Cir. 1996)_. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," _Anderson, 477 U.S. at 247_, or by "some [*4] metaphysical doubt as to the material facts." _Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)_. Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. _Anderson, 477 U.S. at 252_; _Insolia v. Phillip Morris Inc., 216 F.3d 596 (7th Cir. 2000)_. With respect to whether an inmate exhausted administrative remedies, the Court, and not a jury, must resolve factual issues. See _Pavey v. Conley, 528 F.3d 494 (7th Cir. 2008)_.

## FACTS

The summary judgment evidence demonstrates the following. On February 6, 2007, Metropolitan Correctional Center (MCC) inmate Jerome Adams, allegedly unprovoked, threw scalding hot water on Plaintiff, causing severe burns on Plaintiff's face, ear, neck and eye. See Complaint, Docket Entry 1, p.2. According to Plaintiff, Adams is emotionally and mentally disturbed and previously exhibited fits of uncontrollable rage. _Id._ Defendants Pindelski, Dana, Nieberding, and Greenstein, psychologists at the MCC, allegedly knew of Adams' potential for violence, yet did nothing to protect inmates from Adams. _Id._

On February 28, 2007, Plaintiff mailed an administrative [*5] tort claim to the Department of Justice in accordance with the requirements for filing a federal tort claim. The Department of Justice denied Plaintiff's claim on July 2, 2007. Complaint at 1; see also Defendants' Rule 56.1 Statement of Uncontested Facts, Docket Entry (DE) 31, Exhibits C and D. Between April 20, 2007, and May 7, 2008, Plaintiff submitted four requests for administrative remedies. According to MCC Attorney Advisor Richard Hansford, one grievance was returned for not being properly filed; the other three did not involve claims against the Defendants concerning the February 6, 2007, incident. Plaintiff filed three intermediate appeals with the BOP's regional office; but he filed no appeals with the BOP general counsel in Washington, D.C. See Defendants' Rule 56.1 Statement, DE 31, Exhibit B PP 7, 8.

Plaintiff admits that he did not file an MCC grievance for two and half months following the February 6, 2007, incident, but states that he filed an administrative tort claim with the Bureau of Prisons in accordance with the Federal Tort Claim Act, which was denied on July 2, 2007. See Plaintiff's Request for Summary Judgment, DE 40, p.1; Defendants' Rule 56.1 Statement, DE [*6] 31, Exhibits C and D.

Although the documents submitted with Hansford's affidavit do not indicate the subject of the MCC grievances filed by Plaintiff, his response to the motions to dismiss and for summary judgment concede that the only administrative complaint he filed with respect to the Defendants' involvement with the February 6, 2007, incident was the claim for damages submitted to the Attorney General in Washington, D.C., for a federal tort claim. See Plaintiff's Answer to Motion to Dismiss, DE 24; Plaintiff's Memorandum Opposing Summary Judgment, DE 40; see also Defendants' Rule 56.1 Statement, DE 31, Exh. C. Plaintiff signed that administrative complaint on February 28, 2007; it was denied on July 2, 2007; and Plaintiff filed the complaint in the instant case in September 2007. See Defendants' Rule 56.1 Statement, DE 31, Exhs. A, C, and D.

## ANALYSIS

The Prisoner Litigation Reform Act requires that "[n]o action shall be brought with respect to prison conditions under section 1983 … until such administrative remedies as are available are exhausted." _42 U.S.C. § 1997e_. This exhaustion requirement applies to federal prisoners seeking to bring a civil rights suit under _Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)_. [*7] See _Massey v. Helman, 259 F.3d 641, 645-46 (7th Cir. 2001)_. The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." _Woodford v. Ngo, 548 U.S. 81, 88-89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)_ (citation omitted). Exhaustion is necessary, contrary to Plaintiff's contentions, even if the prisoner is requesting relief that the relevant administrative review board has no power to grant, such as monetary damages. _Dole v. Chandler, 438 F.3d 804, 808-09 (7th Cir. 2006)_.

Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the

2009 U.S. Dist. LEXIS 4685, *7

issues on the merits).'" *Woodford, 548 U.S. at 90* (quoting *Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002))*. Proper use of the prison grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo, 286 F.3d at 1025*; *Dole v. Chandler, 438 F.3d at 809*. If the prisoner fails to properly use the prison's grievance process, the prison administrative authority can refuse to hear the case, and [*8] the prisoner's claim can be considered indefinitely unexhausted. *Pozo, 286 F.3d at 1025*; *see also Woodford, 548 U.S. at 89-90*. The grievance procedures applicable to Plaintiff before filing a *Bivens* action included an initial informal resolution stage and a three-step grievance process to the prison's warden, to the Regional Director, and finally to the General Counsel. *See* 28 C.F.R. § 542.13-15.

The summary judgment evidence indicates that Plaintiff did not exhaust administrative remedies with respect to his *Bivens* claim against the individual MCC Defendants. Plaintiff concedes that he did not seek administrative relief under the procedures set out under § 542.13-15. *See* Plaintiff's Memorandum Opposing Defendants' Summary Judgment Motion, DE 40. However, the exhaustion requirement for a claim under the Federal Tort Claim Act (FTCA) requires that Plaintiff file an administrative claim with the appropriate federal agency before filing suit. *See* 28 U.S.C. § 2675(a); *McNeil v. United States, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993)*; *Palay v. U.S., 349 F.3d 418, 425 (7th Cir. 2003)*; *Bontkowski v. U.S., 2003 U.S. Dist. LEXIS 9298, 2003 WL 21281763, *4 (N.D. Ill. 2003)*. Plaintiff complied with this requirement by filing a claim with [*9] the BOP and the Attorney General, who denied the claim on July 2, 2007, and by filing suit in a federal district court within six months after the BOP's decision. *See* Defendant's Rule 56.1 Statement, DE 31, Exh. C & D.

Lawsuits complaining about unconstitutional actions by federal employees are governed by *Bivens* if the suit is against the employees, and by the Federal Tort Claims Act if the suit is against the United States. *Okoro v. Callaghan, 324 F.3d 488, 490 (7th Cir. 2003)*. Plaintiff's complaint, in addition to listing MCC officials as Defendants, states that "one of the claims is against the United States of America." The complaint also asserts claims against the BOP as a division of the United States. *See* Complaint, PP 1, 3, 4, 10, 11. Liberally construed, Plaintiff's complaint names the United States as a Defendant.

**CONCLUSION**

Accordingly, the motion for summary judgment filed by the MCC Defendants is granted, and Plaintiff's claims against them are dismissed for failure to exhaust administrative remedies. Plaintiff's complaint, however, is not dismissed. Plaintiff's complaint, liberally construed, names the United States as a Defendant, and Plaintiff may proceed with his claim [*10] against the United States. The clerk shall issue summons to serve the United States and shall change the caption of the case to "Chess v. United States."

**ENTER:** /s/ Wayne R. Anderson

**Wayne R. Andersen**

**United States District Court Judge**

**DATE: January 23, 2009**

## *Hamilton v. Allen*

United States District Court for the Northern District of Illinois, Eastern Division

February 18, 2009, Decided; February 18, 2009, Filed

08 C 1268

**Reporter**
2009 U.S. Dist. LEXIS 13196; 2009 WL 395470

RICKY HAMILTON R12533, Plaintiff, vs. J. ALLEN, et al., Defendants.

**Counsel:** [*1] Ricky Hamilton, Plaintiff, Pro se, Galesburg, IL.

For J. Allen, Correctional Officer, Grant, Sergeant, Mark Wilson, Lieutenant, Palma, Correctional Officer, Givens, Lieutenant, Davis, Lieutenant, Brown, Lieutenant, Buczkowski, Lieutenant, Defendants: Camile J. Lindsay, LEAD ATTORNEY, Illinois Attorney Generals Office, Chicago, IL.

**Judges:** Charles P. Kocoras, United States District Judge.

**Opinion by:** Charles P. Kocoras

## Opinion

### MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendants J. Allen, Edwards, Grant, Mark Wilson, John Doe, Palma, Givens, Davis, Brown, and Buczkowski ("Defendants") for summary judgment of Plaintiff Ricky Hamilton ("Hamilton")'s complaint for failing to exhaust administrative remedies. For the following reasons, the motion is granted.

### BACKGROUND

Hamilton is a *pro se* litigant currently incarcerated by the Illinois Department of Corrections at Hill Correctional Center ("Hill"). According to the allegations of the complaint, Hamilton's constitutional rights were violated by the Defendants when Hamilton was incarcerated at Stateville Correction Center ("Stateville"). Specifically, Hamilton asserts that on May 26, 2005, Defendants deliberately [*2] set a fire in the cell house at Stateville and failed to provide assistance when he complained of

having trouble breathing. Hamilton sued under *42 U.S.C. § 1983*, alleging that his *Eighth Amendment* right to be free from cruel and unusual punishment was violated.

The Illinois Department of Corrections has a formal grievance procedure. A search of all records was performed at the Illinois Department of Corrections Office of Inmate Issues and did not uncover any grievance filed by Hamilton relative to the May 26, incident. Furthermore, searches conducted at the grievance office at both Stateville and Hill also failed to locate a grievance arising out of the incident.

So that the court may readily determine whether genuine issues of material fact exist, Local Rule 56.1 requires the moving party to file with the court a statement of undisputed material facts supported by appropriate citation to the record to which the moving party asserts there is no genuine issue of material fact. The non-movant is additionally required to submit with the court a response to each of the movant's statements of fact and should the non-movant disagree with any of the movant's statements, then the non-movant [*3] is required to provide appropriate citation to the record. *See Waldridge v. American Hoechst Corp. et al., 24 F.3d 918, 922-23 (7th Cir. 1994)*.

Hamilton's response to Defendants' 56.1 statement of undisputed facts are unsupported by the record. On October 8, 2008, the Defendants moved for summary judgment and the court provided Hamilton with a statement regarding Local Rule 56.2 advising of the required procedures for answering Defendants' motion. Moreover, many of Hamilton's statements are speculative, argumentative, or based on hearsay. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 382 (7th Cir. 2008)* (evidence supporting a factual assertion must represent admissible evidence).

Defendants filed the instant motion for summary judgment on Hamilton's complaint because he failed to

2009 U.S. Dist. LEXIS 13196, *4

exhaust available administrative remedies. As Hamilton's response to Defendants' statement of undisputed facts fails to comply with Local Rule 56.2, the court accepts Defendants' facts as true. In addition, Hamilton has not submitted a response to Defendants' motion challenging the legal assertions contained in the motion.

## LEGAL STANDARD

Summary judgment is appropriate when the [*4] record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. _Fed. R. Civ. P. 56(c)_. The moving party must identify the specific portions of the total record, which it believes establishes the absence of a genuine issue of material fact. _Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)_. This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." _Id., 477 U.S. at 325, 106 S. Ct. at 2554_. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but--"by affidavits or as otherwise provided for in [_Rule 56_]--set out specific facts showing a genuine issue for trial." _Fed. R. Civ. P. 56(e)_.

A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." _Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)_. Rather, a genuine issue of material fact exists when [*5] "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." _Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)_; _Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000)_. The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences that favor the non-moving party. _Anderson, 477 U.S. at 255_; _Bay v. Cassens Transp. Co., 212 F.3d 969, 972 (7th Cir. 2000)_. With these principles in mind, we turn to the Defendants' motion.

## DISCUSSION

Defendants move for summary judgment on the basis that Hamilton failed to file a grievance relating to the May 26, 2005, incident and did not exhaust

administrative remedies available to him. The Prisoner Litigation Reform Act ("PLRA") requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions. See _42 U.S.C. § 1997e(a)_. The Supreme Court has held that even when a plaintiff seeks only monetary damages, he must exhaust available administrative remedies prior to the filing of a civil rights action under _42 U.S.C. § 1983_. _Booth v. Churner, 532 U.S. 731, 733-34, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001)_.

The [*6] issue of exhaustion of available administrative remedies is a threshold inquiry for the court. See _Pavey v. Conley, 528 F.3d 494, 498 (7th Cir. 2008)_. The court determines whether: (a) the prisoner did not exhaust administrative remedies and must go back and exhaust; (b) the prisoner had no opportunity to exhaust administrative remedies (as where prison officials prevent a prisoner from exhausting his remedies) and so he must be given another chance to exhaust; or (c) the failure to exhaust was the prisoner's fault and the case is over. _Id._

Illinois prison systems have a formal administrative grievance process mandated by law. See _20 Ill. Adm. Code § 504.800 et seq._ When an inmate is unable to resolve an incident, problem, or complaint within sixty days, then he may file a written grievance on a form available at all units of his institution. Grievances are reviewed weekly and findings and recommendations are made in writing by the grievance officer to the warden; the inmate is informed of the decision. _20 Ill. Adm. Code § 504.830_. Generally, grievance officers are prison employees, unless there is an employee directly related to the subject matter of the grievance. _20 Ill. Adm. Code § 504.820_. [*7] If there is a risk of imminent injury or irreparable harm, the grievance can go directly to the warden. _20 Ill. Adm. Code § 504.840_.

In support of their motion for summary judgment, Defendants cite affidavits submitted by Jackie Miller, Tammy Garcia, Amy Eldert, and Lyle Hawkinson. Miller is the chairperson for the Officer of Inmate Issues for the Illinois Department of Corrections, Garcia is a grievance counselor at Stateville, Eldert is a record office supervisor at Hill, and Hawkinson is a grievance officer at Hill. Miller describes that department policy requires inmates to file grievances in accordance with Department Rule 504F which dictates that an inmate must first attempt to resolve a grievance through his counselor. If an inmate remains unsatisfied, then he may submit a written grievance to the grievance officer

2009 U.S. Dist. LEXIS 13196, *7

designated by the Chief Administrative Officer ("CAO"). The grievance officer issues a recommendation to the CAO and the inmate. Should an inmate find this decision unsatisfactory, then he may appeal further to the Director of the Department for review; the Director designates an Administrative Review Board ("ARB") to review the appeal. In emergency situations, such [*8] as a substantial risk of imminent bodily injury, the inmate may submit a grievance directly to the CAO.

Each of the witnesses listed above engaged in a search of department records. Miller searched ARB records and discovered that Hamilton did not file a grievance for the May 2005 incident as required by Rule 504F. Garcia reviewed grievance office files at Stateville and was unable to locate any grievance filed by Hamilton relating to the fire in May 2005. Eldert conducted a search of Hamilton's master file at Hill; the master file includes documents from every institution in which the inmate has been housed throughout his incarceration, including grievances. Eldert did not discover any grievances in Hamilton's file concerning the officers' alleged behavior at Stateville in May 2005. According to Hawkinson, had there been a grievance filed by Hamilton, then it would have been stamped and placed in his file.

Nine grievances were found in Hamilton's file, but none of these grievances pertained to a fire at Stateville or

Hamilton's alleged breathing difficulties subsequently incurred. In this case, Hamilton did attach a grievance to his complaint, but it was neither signed by a counselor [*9] nor stamped by the grievance office. Therefore, Defendants argue it is undisputed that Hamilton failed to exhaust available administrative remedies. As we mentioned earlier, Hamilton has not provided any additional facts nor has he properly answered Defendants' 56.1 statement of undisputed facts. He fails to provide any evidence to refute Defendants' contention. Without any countervailing evidence to dispute whether Hamilton's failure to exhaust was innocent, the court finds that there is no genuine issue of fact as to the exhaustion of available administrative remedies. Hamilton has not offered the court any support to find that he has complied with the PLRA.

## CONCLUSION

Based on the foregoing, the Defendants' motion for summary judgment is granted.

/s/ Charles P. Kocoras

Charles P. Kocoras

United States District Judge

Dated: February 18, 2009

## *Conley v. Keys*

United States District Court for the Central District of Illinois

August 29, 2011, Decided; August 29, 2011, Filed

09-1299

**Reporter**
2011 U.S. Dist. LEXIS 96673; 2011 WL 3819437

ANTHONY CONLEY, Plaintiff, vs. MARCIA KEYS,, et al., Defendants.

**Prior History:** *Conley v. Mathes, 2010 U.S. Dist. LEXIS 82352 (C.D. Ill., Aug. 12, 2010)*

**Counsel:** [*1] Anthony Conley, Plaintiff, Pro se, Danville, IL.

For Marcia Keys, Dietary Manager at Danville Correctional Center, Keith Anglin, Warden, Victor Calloway, Assistant Warden, Suzann Griswold, Food Service of I.D.O.C., Defendants: Lisa A Cook, LEAD ATTORNEY, ILLINOIS ATTORNEY GENERAL, Springfield, IL.

For D Laker, Counselor at Danville Correctional Center, . Peterson, Counselor at Danville Correctional Center, Defendants: Ryan A Nelson, LEAD ATTORNEY, ILLINOIS ATTORNEY GENERAL, Springfield, IL.

**Judges:** JAMES E. SHADID, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JAMES E. SHADID

# Opinion

SUMMARY JUDGMENT AND CASE MANAGEMENT ORDER

This cause is before the court for consideration of Defendants Keith Anglin, Victor Calloway, Suzanne Griswold and Marcia Keys' motion for summary judgment, [d/e 50]; the Plaintiff's motion to supplement his response with the affidavit of an expert [d/e 56] and the Defendants motion to strike that affidavit. [d/e 61]

I. BACKGROUND

The court dismissed the Plaintiff's original complaint as a violation of *Rule 8*, *18* and *20 of the Federal Rules of Civil Procedure*. *See* September 21, 2009 Court Order.

After merit review of the Plaintiff's amended complaint, the court found that the Plaintiff had stated two [*2] claims pursuant to *42 U.S.C. §1983* against seven Defendants at Danville Correctional Center. *See* October 29, 2009 Merit Review Order. On August 12, 2010, the court granted summary judgment on one claim for failure to exhaust administrative remedies. *See* August 12, 2010 Summary Judgment Order.

Therefore, the Plaintiff has one surviving claim before the court: Defendants Marcia Keys, Suzanne Griswold, Keith Anglin and Victor Calloway were deliberately indifferent to the Plaintiff's health and safety when they continued to provide the Plaintiff a high soy content diet despite the negative consequences for the Plaintiff's health.

II. FACTS

Defendant Marcia Keys states that she is the Corrections Food Service Manager for the Illinois Department of Corrections (herein IDOC) at Danville Correctional Center. Keys says her duties include managing food preparation as well as the service, storage, baking, meat cutting and other food services at the correctional center. (Def. Mot, Keys Aff, p. 1). Keys says she also must make sure that the facility follows the menus issued by IDOC's Food Service Administrator. These menus specify food items and portion sizes. Finally, Keys says she is also responsible [*3] for supervising other Food Service Supervisors at Danville Correctional Center.

Keys says all meals served to inmates at Danville are prepared in the kitchen by inmates under the supervisor of Food Service Supervisors. The supervisors follow all IDOC rules and regulations in the preparation of that food. (Def. Mot, Keys. Aff. p.2). "Substitutions of food items that meet necessary dietary restrictions become necessary on occasion due to the unavailability of certain food items." (Def. Mot, Keys Aff, p. 1). However, Keys says she is not personally responsible for creating menus or portion sizes. All of those decisions are made

by IDOC's Food Service Administrator. Keys says she is not aware of any risk of harm to inmates based on the consumption of soy.

Suzanne Griswold says she is the IDOC Food Service Administrator. She also states that she is not aware of any risk of harm to inmates based on the consumption of soy or other food served by the IDOC. Griswold says she has never met or spoken with the Plaintiff. (Def. Memo, Griswold Aff., p.1). The Plaintiff agrees that he has never communicated with Griswold, but he named her as a Defendant because of her supervisory position. (Def. Mot, [*4] Ex. A., Plain. Aff., p. 66)

The Plaintiff says he named Warden Keith Anglin as a Defendant because he believes this Defendant had notice of the high soy content in his diet due to his March 7, 2008 grievance. The Plaintiff says Anglin did not personally respond to his grievance nor did he ever speak directly to Anglin. (Def. Mot, Ex. A., Plain. Aff., p. 61-62). The Plaintiff also says he wrote a letter to Anglin in 2008 or 2009.

The Plaintiff says he did have a brief conversation with Defendant Calloway in 2009 when he asked why he had to go through the Chaplain for a non-soy diet. Calloway said he was aware of the Plaintiff's grievance. (Def. Mot, Ex. A., Plain. Aff., p. 65).

The Plaintiff has been incarcerated since 1997. (Def. Memo, Ex. A., p. 7). When he entered IDOC, the Plaintiff says he weighed 285. He currently weighs 352. During his incarceration, the Plaintiff says he has purchased items from the commissary about three times a month. The Plaintiff admits some of the items he selects contain soy. (Def. Mot, Ex. A., Plain. Aff., p. 14).

The Plaintiff says he was diagnosed with high blood pressure in 1997. He was diagnosed with high cholesterol in 2000. The Plaintiff says he was [*5] diagnosed with H. Pylori in March of 2008 and November of 2008 by Dr. Amegi. (Def. Mot, Ex. A., Plain. Aff., p. 21-22) The Doctor told the Plaintiff that the cause could be from fecal matter in water or contaminated utensils. (Def. Mot, Ex. A., Plain. Aff., p. 24). The Plaintiff admits the Doctor did not tell him soy products were the cause of H. Pylori. (Def. Mot, Ex. A., Plain. Aff., p. 25

In his deposition, the Plaintiff say he filed this lawsuit because he believes he is sensitive to soy. The Plaintiff says he first noticed a difference in 2008. (Def. Mot, Ex.

A., Plain. Aff., p. 27-28). The Plaintiff says he believes soy irritates his bowel and causes an excessive amount of gas. (Def. Mot, Ex. A., Plain. Aff., p. 33). The Plaintiff further believes the soy causes acid reflux and blood in his stool. (Def. Mot, Ex. A., Plain. Aff., p. 33). The Plaintiff says he also believes soy has estrogen that he should not be consuming. The Plaintiff says he learned about the estrogen levels from another inmate who provided him with a copy of a study. ((Def. Mot, Ex. A., Plain. Aff., p. 39). No doctor has ever told the Plaintiff he has high estrogen levels. (Def. Mot, Ex. A., Plain. Aff., p. [*6] 40-41).

In his deposition, the Plaintiff says Dr. Amegi told him he had irritable bowel syndrome in February of 2008. The Plaintiff says no doctor has ever told him it was caused by soy. (Def. Mot, Ex. A., Plain. Aff., p. 35). The Plaintiff further stated that after he eats soy, he has foul smelling gas, but again, no Doctor has ever told him that soy was the cause. (Def. Mot, Ex. A., Plain. Aff., p. 38). The Plaintiff says he first noticed blood in his stool in 2008 and he noticed it after he ate soy. The Plaintiff admits that a Doctor told him H. Pylori could cause this. (Def. Mot, Ex. A., Plain. Aff., p. 42).

The Plaintiff says at times he has had problems with a lump in his stomach. The Plaintiff says it only happens when he eats soy. He did go to a Doctor for an examination who told him the lump was caused by gas. (Def. Mot, Ex. A., Plain. Aff., p. 47-48).

III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)* [*7] (*citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970))*. The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson, 477 U.S. at 248*.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." _Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2000)_. "If a party . . . fails to properly address another party's assertion of fact as required by _Rule 56(c)_, the court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." _Fed. R. Civ. P. 56(e)_.

IV. ANALYSIS

The Defendants argue that the Plaintiff cannot demonstrate that they violated [*8] his _Eighth Amendment_ rights. The Constitution's prohibition against punitive conditions imposes upon prison officials the duty to "provide humane conditions of confinement" for prisoners. _Farmer v Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)_. Correctional officials must ensure that inmates receive "adequate food, clothing, shelter, protection, and medical care." _Oliver v. Deen, 77 F.3d 156, 159 (7th Cir. 1996)_. Proof of a conditions of confinement claim entails both an objective component and a subjective one. _Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)_; _Delaney v. DeTella, 256 F.3d 679, 683 (7th Cir. 2001)_. To show that a deprivation is "objectively, sufficiently serious," the Plaintiff must demonstrate that he was subjected to an "extreme deprivation." _Turner v. Miller, 301 F.3d 599, 603 (7th Cir. 2002)_ citing _Delaney 256 F.3d at 683_. The subjective component requires the Plaintiff to show that the Defendants acted with "deliberate indifference," which entails, at "a minimum," that the Defendants acted with "_actual_ knowledge of _impending_ harm _easily_ preventable." _Delaney, 256 F.3d at 683_ quoting _Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992)_.

First, the Defendants argue that the Plaintiff has [*9] presented no medical evidence that the soy diet has caused him any serious harm. The court noted in its initial merit review order that it was "doubtful the Plaintiff can demonstrate that the consumption of soy lead to the diagnosis of an H. Pylori or Helicobacter Plylor infection." October 29, 2009 Merit Review Order, p. 2. H. Pylori "is a bacterial infection that affects the stomach lining." _Hardy v Aguinaldo, 2003 U.S. Dist. LEXIS 9706, 2003 WL 21350070 at 4 (N.D. Ill., June 10, 2003)_. The bacteria "is most likely spread by fecal contamination of food and eating utensils or by contaminated water." _Lozano v Corrections Corp. of America, 23 Fed. Appx._ _348, 2001 WL 1355607 at 1 (6th Cir. 2001)_. _See also_ _Woodard v Weberg, 2009 U.S. Dist. LEXIS 8807, 2009 WL 310898 at 4 (W.D. Mich. Feb 6, 2009)_ ("transmission of H. Pylori bacterium generally requires oral-oral or fecal-oral contamination."). In his deposition, the Plaintiff now admits that H. Pylori was not caused by soy. (Def. Mot, Ex. A., Plain. Aff., p. 25).

Also in his deposition, the Plaintiff admits that no doctor has ever told him that his irritable bowel syndrome was caused by the consumption of soy. (Def. Mot, Ex. A., Plain. Aff., p. 35). He admits that no doctor has ever told him he has high estrogen [*10] levels. (Def. Mot, Ex. A., Plain. Aff., p. 40, 41). He admits that no doctor has ever told him that eating soy caused him to pass blood in his stool. (Def. Mot, Ex. A., Plain. Aff., p. 42) He admits that no doctor has ever told him that his acid reflux was caused by soy. (Def. Mot, Ex. A., Plain. Aff., p. 46) He admits that no doctor has ever told him that the lump he describes in his stomach is caused by soy. (Def. Mot, Ex. A., Plain. Aff., p. 48)

The Plaintiff's claims are based on his own belief that soy impacts his health. The Plaintiff says his symptoms go away if he stops eating soy for a period of time. However, the Plaintiff has no expertise in nutrition or diet, and "[e]xpert testimony is required when the causal link between an alleged deprivation and injury is not within the common experience or observation of the average juror." _Hoeft v. Harrop, 366 Fed. Appx. 681, 2010 WL 743842 at 2 (7th Cir. 2010)_; _see also Hendrickson v Cooper, 589 F.3d 887, 892 (7th Cir. 2009)_. The court notes that the Plaintiff has made an eleventh hour attempt to submit the testimony of an expert in this case which the court discusses below. However, in his deposition, the Plaintiff said he did not have an expert [*11] witness and he did not disclose or submit an expert witness report at any time prior to the close of discovery or the motion for summary judgment. (Def. Mot, Ex. A., Plain. Aff., p. 60).

The court notes that even if the Plaintiff could somehow prove that he face a sufficiently serious harm, he has no evidence that the Defendants were deliberately indifferent. In other words, he has no evidence that these Defendants knew that Plaintiff suffered from the alleged symptoms or knew that the IDOC's soy diet caused them or carried a substantial risk of harm of causing them. For instance, the Plaintiff says he believes Warden Anglin knew about his problems with the soy diet because he wrote a grievance. However, the Plaintiff admits the Warden did not personally review his

2011 U.S. Dist. LEXIS 96673, *11

grievance and he has no evidence that he read it. (Def. Mot, Ex. A., Plain. Aff., p. 61, 62). The Plaintiff also never spoke directly to the Warden. The Plaintiff also claims he wrote a letter to Warden Anglin sometime in 2008 or 2009, but has no evidence Anglin received it or read it. See *Wagner v McCann, 2011 U.S. Dist. LEXIS 82918, 2011 WL 3205352 at 5 (N.D.Ill. July 27, 2011)* (a single letter is "insufficient for personal liability to attach."); *Volk v. Coler, 638 F. Supp. 1540, 1549 (C.D. 1986)* [*12] aff'd *845 F.2d 1422 (7th Cir. 1988)*(letters are insufficient to create personal involvement.); *Gray v Taylor, 714 F.Supp2d 903, 911 (N.D.Ill. 2010)*(Letters to IDOC Director did not create personal involvement.) The Plaintiff has failed to demonstrate that Defendant Anglin has any liability for his claims concerning his soy diet.

The Plaintiff says he named Defendant Griswold as a Defendant because she is the food service supervisor and makes out the IDOC menus. However, the Plaintiff has never communicated with her in any way. There is no evidence that the Defendant was aware of a risk of harm to IDOC inmates based on the soy in the diet, nor that she was aware of any specific problems claimed by the Plaintiff.

The Plaintiff says he talked with Defendant Calloway briefly in 2009, and he asked why he had to talk to the Chaplain about a non-soy diet. The Plaintiff claims Defendant Calloway was aware of his grievance, but this is the only contact he had with the Defendant. The response to the Plaintiff's grievance indicated that all menus provided to the Plaintiff were approved by IDOC administration in Springfield and the diet follow all required policies and procedures. There is no evidence [*13] before the court that this Defendant had any responsibility for the IDOC diet, nor that he knew soy in the diet was harmful to inmates.

The Plaintiff claims he did speak to Defendant Keys and requested a non-soy diet in February of 2008. The Plaintiff says he told her he was having gas problems. The Defendants state that even assuming this is true, gas does not rise to the level of constitutional consideration. There is no evidence that this Defendant has reason to believe soy posed a serious risk to the Plaintiff. Furthermore, both Calloway and Keys relied on the menus set and approved by the administration in Springfield. Keys says it was her job to make sure that all the menus at Danville followed these requirements, and there is no evidence to support that the Plaintiff's health problems were attributable to this diet. See *Giv-*

*ens v Walker, 2009 U.S. Dist. LEXIS 98876, 2009 WL 3575379 (C.D.Ill. Oct. 23, 2009* (summary judgment granted when no evidence provided that claimed medical problems were attributable to a soy diet.)

As this court has noted, the Plaintiff has filed a motion asking the court to stay a decision on the motion for summary judgment until he can present an affidavit from his expert witness. [d/e [*14] 56]. The Plaintiff has then filed an affidavit from Clinical Nutritionist Kaayla Daniel. [d/e 57]. The Defendants have responded with a motion to strike the affidavit. [d/e 61]

The Defendants state that the Plaintiff did not properly disclose an expert witness pursuant to *Federal Rule of Civil Procedure 26(a)(2)*. The Defendants say the Plaintiff did not state he had an expert witness in response to interrogatories, nor did he say he had an expert when asked during his deposition. (Def. Mot, Ex. A, B). Therefore, no discovery was conducted concerning this witness and since discovery closed on January 31, 2011, the Defendants are that its too late to conduct discovery at this point in the litigation.

The Plaintiff says he did disclose that Ms. Daniel might be a witness in response to interrogatories, but the court notes that the Plaintiff did not clearly designate that she would qualify as an expert witness.

Because expert witnesses are different from other witnesses, there is a special rule requiring Plaintiffs and Defendants to name their experts and explain what those experts are going to say at trial. *Fed.R.Civ.P. 26(a)(2)*. If a party does not follow these guidelines, then the "court [*15] will not allow that expert witness to present evidence in this case." *Serocki v. Snthes CMF, 2006 WL 6210737 at 2*(W.D. Wis. Oct. 27, 2006). The court does recognize that *Rule 26* requires the disclosure of expert witnesses at the time directed by the court or in the absence of such a court order, the disclosures must be made " at least 90 days before the date set for trial or for the case to be ready for trial." *26(c)(2)*. In the case before the court, there was a general date set for the end of discovery and no trial date had been set when the summary judgment motion was filed. Nonetheless, the Plaintiff has provided no explanation for his failure to disclose this expert witness or provide her report prior to the close of discovery.

More importantly, the court notes that even if the court allowed the Plaintiff to submit the affidavit of Ms. Daniel, it would not be helpful to his claims. Daniel states she is

a clinical nutritionist with extensive background in the effects of soy in the diet. Ms. Daniel says:

> It is my opinion that, based on the soy content of the food served by the Illinois Department of Corrections, if (the Plaintiff) is not allowed to purchase commissary food and is forced [*16] to consume the general population diet that his health will continue to be endangered. (d/e 57, Dan. Aff., p.4).

The Plaintiff has never claimed that he was denied the ability to buy food from the commissary and in fact admits that he does purchase food on a regular basis. (Def. Mot, Ex. A., Plain. Aff., p. 14). The motion to add the affidavit is therefore denied. [d/e 56]. The motion to strike the affidavit is denied as moot. [d/e 61]

**IT IS THEREFORE ORDERED that:**

**1) The Plaintiff's motion to supplement his response to the motion for summary judgment with the affidavit of an expert is denied. [d/e 56]. The Defendants' motion to strike the affidavit is denied as moot. [d/e 61]**

**2) Defendants Anglin, Calloway, Keys and Griswold's motion for summary judgment is granted. [d/e 50 ]. The Clerk of the court is directed to enter judgment in favor of the Defendants and against the Plaintiff pursuant to _Fed. R. Civ. P. 56_. The case is terminated. The parties are to bear their own costs.**

**3) If the Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. _Fed. R. App. P. 4(a)(4)_. A motion for leave to appeal _in forma pauperis_ [*17] should set forth the issues the Plaintiff plans to present on appeal. _See Fed. R. App. P. 24(a)(1)(C)_. If the Plaintiff does**

choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.

**4) The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the Plaintiff's prison trust fund account if such funds are available. If the Plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the Plaintiff's trust fund account to the clerk of court each time the Plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**5) The Plaintiff is responsible for ensuring the $350.00 filing fee is paid to clerk of the court even though his case has been dismissed. Release from incarceration does not relieve the Plaintiff of his obligation to pay the filing fee in full. The Plaintiff must notify [*18] the clerk of the court of a change of address and phone number within seven days of such change.**

**6) The clerk is directed to mail a copy of this order to the Plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 29th day of August, 2011.

/s/ James E. Shadid

JAMES E. SHADID

UNITED STATES DISTRICT JUDGE

### *Smith v. Rector*

United States District Court for the Southern District of Illinois

September 30, 2013, Decided; September 30, 2013, Filed

Case No. 13-cv-837-GPM

**Reporter**

2013 U.S. Dist. LEXIS 140359; 2013 WL 5436371

DARRELL SMITH, # R-16310, Plaintiff, vs. ANGEL RECTOR, DR. SHAW, and DEBBIE GRAHAM, Defendants.

**Subsequent History:** Dismissed by, in part, Motion granted by, in part, Motion denied by, in part *Smith v. Rector, 2013 U.S. Dist. LEXIS 162124 (S.D. Ill., Nov. 14, 2013)*
Magistrate's recommendation at *Smith v. Rector, 2014 U.S. Dist. LEXIS 182746 (S.D. Ill., Dec. 23, 2014)*

**Counsel:** [*1] Darrell Smith, Plaintiff, Pro se, Pinckneyville, IL.

**Judges:** G. PATRICK MURPHY, United States District Judge.

**Opinion by:** G. PATRICK MURPHY

# Opinion

### MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this *pro se* civil rights action pursuant to *42 U.S.C. § 1983*. Plaintiff claims that Defendants, all health care providers at Pinckneyville, were deliberately indifferent to his serious medical condition of diabetes.

More specifically, Plaintiff claims that Defendant Rector (nurse practitioner) has prescribed excessively high doses of insulin for him, and this is causing damage to his kidneys and pancreas (Doc. 1, pp. 1, 6). Defendant Dr. Shaw has collaborated with Defendant Rector in prescribing this dosage. Plaintiff has no choice but to take the prescribed dose, or go without this medication that he needs in order to manage his condition. He claims that because of the prison's meal schedule, he is not given food at the time he gets the insulin shot, and this combined with the higher dose has caused his health to decline (Doc. 1, p. 6). [1] He adds a general request that he should be provided with a more suitable and balanced diet, [*2] and claims that the "overutilization of soybean products" has caused problems for him (Doc. 1, p. 7).

He further complains that the "accu-check" device used by the nurses to check his blood sugar stabs too deeply into the flesh of his fingers, striking the bone and causing pain and callouses (Doc. 1, p. 5). These checks are done without sufficient disinfectant for the puncture site. His complaints to Defendant Graham (a nurse) about these problems have fallen on deaf ears.

Defendants Shaw and Rector have refused to prescribe Plaintiff a physical therapy regimen, which would allow him to use the gym facility at the prison (Doc. 1, p. 6). Plaintiff asserts that he needs regular exercise in order to control his diabetes.

Finally, Plaintiff sought treatment for a toenail fungus, and was charged a co-payment for that visit. However, when he was examined by a health care worker, he was told that they do not treat this particular condition, thus no treatment [*3] was provided. Plaintiff asserts that due to his diabetes, a minor problem like this could develop into a serious condition that could lead to dangerous complications, even amputation, if untreated (Doc. 1, p. 6). He also takes issue with being charged a fee despite receiving no help.

### Merits Review Pursuant to *28 U.S.C. § 1915A*

Under *§ 1915A*, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

---

[1] Plaintiff attaches a number of grievances and responses to those grievances, two of which indicate that he is provided with a "snack bag" of food in the morning and at night, when his insulin is administered (Doc. 1-1, p. 4; Doc. 1-2, p. 6).

For the convenience of the Court, Plaintiff's claims are divided into the following counts:

**Count 1:** Against Defendants Rector and Shaw for prescribing improper dosages of insulin;

**Count 2:** Against Defendants Shaw and Rector for refusing to approve Plaintiff's use of the gym facility;

**Count 3:** Deliberate indifference claim for the denial of sufficient food to coincide with Plaintiff's insulin doses, as well as other deficiencies in the general prison diet;

**Count 4:** Against Defendant Graham for deliberate indifference, for subjecting Plaintiff to pain and a risk of infection from the "accu-check" device;

**Count 5:** Denial [*4] of treatment for Plaintiff's toenail fungus; and

**Count 6:** Deprivation of property for the imposition of a health care co-payment when no treatment was rendered.

After fully considering the allegations in Plaintiff's complaint, the Court concludes that his pleading fails to state any constitutional claim upon which relief may be granted. As shall be explained below, the complaint and this action are subject to summary dismissal. However, Plaintiff shall be given leave to amend his complaint as to the allegations in **Count 5**, in order for the Court to determine whether that claim may merit further review.

## Count 1

Deliberate indifference by a medical provider to a prisoner's serious medical needs may constitute cruel and unusual punishment under the _Eighth Amendment_. _Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)_; _Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)_; see _Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)_ (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." _Estelle, 429 U.S. at 106_. See also _Sanville v. McCaughtry, 266 F.3d 724, 734 (7th Cir. 2001)_.

To prevail [*5] on an _Eighth Amendment_ claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. See _Farmer v. Brennan, 511 U.S._

825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); _Dunigan ex rel. Nyman v. Winnebago Cnty., 165 F.3d 587, 590 (7th Cir. 1999)_. Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

_Sherrod v. Lingle, 223 F.3d 605, 609 (7th Cir. 2000)_. As to the subjective component, a complaint must indicate that the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. _Farmer, 511 U.S. at 842_.

Plaintiff's diabetes is, without a doubt, an objectively serious condition. Having satisfied the objective component of an _Eighth Amendment_ claim, the pertinent question here is whether Plaintiff's prison medical providers acted with deliberate indifference to a known risk of serious harm.

An inmate's mere dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate [*6] indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice. _Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)_; _Sanville v. McCaughtry, 266 F.3d 724, 734 (7th Cir. 2001)_; _Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996)_. The _Eighth Amendment_ does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." _Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997)_. Further, a difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference. _Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006)_; see also _Garvin v. Armstrong, 236 F.3d 896, 898 (7th Cir. 2001)_.

In the instant case, the difference of opinion as to the proper dosage of insulin is between Defendants Rector and Shaw (a nurse and a doctor), and Plaintiff, who gives no indication that he has any professional medical training. Even if the Defendants' prescribed course of treatment for Plaintiff's diabetes were to constitute malpractice, "medical malpractice does not become a constitutional violation [*7] merely because the victim is a prisoner. In evaluating the evidence, we must remain sensitive to the line between malpractice and treatment that is so far out of bounds that it was blatantly

2013 U.S. Dist. LEXIS 140359, *7

inappropriate or not even based on medical judgment . . . this is a high standard." *King v. Kramer, 680 F.3d 1013, 1019 (7th Cir. 2012)* (internal citations and quotations omitted).

Plaintiff's allegations do not indicate that the Defendants' actions crossed this line to violate his constitutional rights. To the contrary, they have provided regular insulin treatment as well as tests to monitor his blood sugar and other functions. Nothing in the pleading indicates that their course of treatment was not based on medical judgment, or recklessly disregarded a known risk of harm. While Plaintiff believes his prescribed dosage of insulin is too high, this allegation, if proven true, points to possible negligence or malpractice at worst. It does not suggest deliberate indifference on the part of Defendants Rector or Shaw in their treatment of Plaintiff's diabetes. The civil rights claim in Count 1 shall therefore be dismissed with prejudice.

## Count 2

Likewise, the denial of Plaintiff's request for permission [*8] to use the gym facility for exercise by Defendants Shaw and Rector does not rise to the level of a constitutional claim.

The Seventh Circuit has noted that a "[l]ack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened." *Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir. 1988)*; *French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985)*, *cert. denied*, *479 U.S. 817, 107 S. Ct. 77, 93 L. Ed. 2d 32 (1986)*. Plaintiff alleges that in his case, sufficient exercise is especially important for him in order to help manage his diabetes. However, nothing in Plaintiff's complaint indicates that he has been deprived of the opportunity for out-of-cell exercise as it is available to any prisoner. Instead, he states that the gym facility can be used by prisoners who receive special permission or doctor's orders authorizing gym access, and Defendants Shaw and Rector determined that Plaintiff did not have a medical need for such a pass.

As discussed above in Count 1, Plaintiff's disagreement with these medical Defendants' judgment regarding his need for a special gym pass does not support a claim for deliberate indifference to his medical [*9] needs. Furthermore, Plaintiff does not indicate that he has been denied yard time or any other regularly available out-of-cell exercise or recreation time. Many prisoners who desire additional exercise do so in their cells, by jogging in place or by doing aerobics, for example. *See e.g.*, *Harris, 839 F.2d at 1236*. Such activities are freely available to Plaintiff.

In the instant case, Plaintiff was not deprived of any regular exercise. He was simply not given the extra privilege of gym access. This does not violate his constitutional rights; Count 2 shall be dismissed with prejudice.

## Count 3

Plaintiff claims that ever since the prison changed the meal schedule to serve "brunch" at 11:00 a.m., he has had to go without food from the time he gets his 5:00 a.m. insulin dose until brunch (Doc. 1, p. 6). He claims this has had harmful effects on his kidneys and pancreas. However, his exhibits state that he is regularly served a "snack bag" at the time he gets his insulin (Doc. 1-1, p. 4; Doc. 1-2, p. 6). The allegations in the complaint do not clearly contradict the records that Plaintiff is given some food with his medication, however, he states that "what we are fed is not nearly enough to [*10] offset the powerful effect of the insulin" (Doc. 1, p. 6).

Taking these allegations and Plaintiff's exhibits as a whole, the complaint does not indicate that any Defendant was deliberately indifferent to Plaintiff's medical needs for food to be provided with his medication. Plaintiff may disagree with the adequacy of the amount of food included in the "snack bag" or with the meal schedule. However, such a disagreement does not support a constitutional claim for deliberate indifference to his medical needs. Plaintiff's complaint and documentation indicate that food and medicine are being provided to him in accordance with acceptable nutritional and medical standards.

By the same token, his vague allegations that the prison meals are nutritionally inadequate or depend too heavily on soy products do not support a constitutional claim. A denial of food may satisfy the objective element of an *Eighth Amendment* claim, however, this is not a *per se* constitutional violation. Rather, a district court "must assess the amount and duration of the deprivation." *Reed v. McBride, 178 F.3d 849, 853 (7th Cir. 1999)*. *See generally Wilson v. Seiter, 501 U.S. 294, 304, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)* (it would be an *Eighth Amendment* [*11] violation to deny a prisoner an "identifiable human need such as food"). Here, Plaintiff

2013 U.S. Dist. LEXIS 140359, *11

does not claim to have missed any meals. Instead, he asserts that the prison diet is not sufficiently balanced with fruits, vegetables, and non-soy protein. These general allegations do not show a sufficiently serious deprivation of a basic human need, as is required to establish the objective prong of a constitutional claim. See Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). Nor does the complaint even suggest that any Defendant (or any other prison official) had the subjective intent to deprive Plaintiff of adequate nutrition or otherwise show deliberate indifference to a serious risk of harm to him from the prison diet.

For these reasons, Count 3 shall be dismissed with prejudice.

## Count 4

Plaintiff states that he has complained numerous times to Defendant Graham and other medical staff regarding the pain he has experienced from the "accu-check" device used to monitor his blood sugar. In addition, he claims that the nurses do not maintain a sterile environment or use disinfectant, placing him at risk of infection when his finger is pierced for the blood check.

Any medical procedure involving the piercing [*12] of skin to obtain a blood sample is likely to involve a certain degree of pain. The device used at Pinckneyville may not be the best or most pain-free one on the market, but this does not amount to a constitutional violation. As noted above in the discussion of Count 1, prisoners are not entitled to the best medical care available. Prison medical care is constitutionally acceptable if the providers take "reasonable measures to meet a substantial risk of serious harm." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997).

As to Plaintiff's concerns about the non-sterile environment, he does not indicate that he has ever contracted any infection or suffered any serious consequences as a result of the allegedly poor infection-control measures when he goes in for his finger-stick. The circumstances he describes do not suggest that Defendant Graham or the other health care staff have been deliberately indifferent to a substantial risk of serious harm to Plaintiff. Count 4 shall be dismissed with prejudice.

## Count 5

Plaintiff's claim that he was denied any treatment for his toenail fungus does raise the possibility of a constitutional violation. This medical condition in and of itself may not [*13] be serious, but as Plaintiff points out, an untreated foot problem may lead to significant complications for a diabetic such as himself. Further, the response to Plaintiff's grievance states that he was categorically denied treatment for the fungus because it is considered a "cosmetic" problem (Doc. 1-3, p. 6). However, Plaintiff fails to connect any individual defendant with the alleged denial of treatment, thus, the complaint is inadequate to state a claim upon which relief might be granted.

Count 5 shall be dismissed without prejudice. Plaintiff shall be given one opportunity to submit an amended complaint **on this count only**, as described below. If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g). The amended complaint shall be subject to review pursuant to § 1915A.

## Count 6

Plaintiff's final claim is that he was deprived of his property (the $5.00 medical co-payment) when he was charged for a health care visit but received no treatment for the toenail fungus. An inmate's constitutional rights are not violated by [*14] the collection of a fee for prison medical or dental services. Whether or not the assessment of a co-payment was proper is a question of state law, not cognizable in a § 1983 action. Poole v. Isaacs, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"). Further, to state a Fourteenth Amendment due process claim, a prisoner must establish a deprivation of liberty or property without due process of law. If the state provides an adequate remedy, there is no civil rights claim. Hudson v. Palmer, 468 U.S. 517, 530-36, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. Murdock v. Washington, 193 F.3d 510, 513 (7th Cir. 1999); Stewart v. McGinnis, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Accordingly, Plaintiff's civil rights claim in Count 6 shall be dismissed with prejudice.

## Pending Motions

Because Plaintiff shall be given an opportunity to submit an amended complaint, his motion [*15] for recruitment of counsel (Doc. 3) and motion for service of process at government expense (Doc. 4) shall be held in abeyance pending receipt and review of the amended complaint.

## Disposition

**IT IS HEREBY ORDERED** that the complaint (Doc. 1) is **DISMISSED. COUNTS 1, 2, 3, 4, and 6** of the complaint are **DISMISSED WITH PREJUDICE. COUNT 5** is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support a deliberate indifference claim **IN COUNT 5 ONLY** (failure to treat Plaintiff's toenail fungus). The amended complaint must name the individual Defendant(s) directly responsible for the alleged constitutional deprivations, and must be filed within 35 days of the entry of this order (on or before **Monday, November 4**, 2013). An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. See *Flannery v. Recording Indus. Ass'n of Am., 354 F.3d 632, 638 n.1 (7th Cir. 2004)*. The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any [*16] other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Failure to file an amended complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of *28 U.S.C. § 1915(g)*.

No service shall be ordered on any Defendant until after the Court completes its *§ 1915A* review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See *FED. R. CIV. P. 41(b)*.

**IT** [*17] **IS SO ORDERED.**

**DATED:** September 30, 2013

/s/ G. Patrick Murphy

G. PATRICK MURPHY

United States District Judge

## _Adams v. Talbor_

United States District Court for the Central District of Illinois, Urbana Division

November 6, 2013, Decided; November 6, 2013, Filed

No.: 13-2221-JES-JAG

**Reporter**

2013 U.S. Dist. LEXIS 158632; 2013 WL 5940630

BRYANT ADAMS, Plaintiff, v. PAUL TALBOR, MARRY MILLER, LOUIS SHICKER, KEITH ANGLIN, LUKE HARTIGAN, TY BATES, SUZANN BAILEY, WEXFORD HEALTH SOURCES, INC., and UNIVERSITY OF ILLINOIS MEDICAL CENTER, Defendants.

**Counsel:** [*1] Bryant Adams, Plaintiff, Pro se, Danville, IL.

**Judges:** JAMES E. SHADID, CHIEF UNITED STATES DISTRICT JUDGE.

**Opinion by:** JAMES E. SHADID

## Opinion

### **MERIT REVIEW OPINION**

**JAMES E. SHADID, Chief U.S. District Judge:**

This cause is before the Court for a merit review, pursuant to _28 U.S.C. § 1915A_, of Plaintiff Bryant Adams' claims.

### **MERIT REVIEW UNDER** _28 U.S.C. § 1915A_

Under _28 U.S.C. § 1915(e)(2)_ and _§ 1915A_, the Court is required to carefully screen a complaint filed by a plaintiff who seeks to proceed in forma pauperis. The Court must dismiss a complaint, or a portion thereof, if the plaintiff has raised claims that are legally "frivolous or malicious," that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. _Id._ The test for determining if an action is frivolous or without merit is whether the plaintiff can make a rational argument on the law or facts in support of the claim. _Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)_. A complaint fails to state a claim for relief if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." _Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)_; _Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)_.

In [*2] reviewing the complaint, the Court accepts the factual allegations as true and liberally construes them in plaintiff's favor. _Turley v. Rednour, 729 F.3d 645, 651 (7th Cir. 2013)_. Conclusory statements and labels are insufficient. _Fed. R. Civ. P. 8_; _Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)_(holding that, in order to determine if a complaint states a plausible claim, the court must take non-conclusory, non-speculative facts as true, draw all reasonable inferences in the pleader's favor, and isolate and ignore statements that simply rehash claim elements or offer only legal labels and conclusions). Instead, sufficient facts must be provided to "state a claim for relief that is plausible on its face." _Alexander v. United States, 721 F.3d 418, 422 (7th Cir. 2013)_(internal quotation omitted).

**II.**

**ANALYSIS**

Adams has alleged four causes of action against Defendants—two federal causes of action and two state law causes of action. As for his federal causes of action, Adams contends that Defendants violated his _Eighth Amendment_ right to be free from cruel and unusual punishment by requiring him to eat a soy based diet. Adams alleges that this soy based diet has [*3] caused him to suffer physical illness and stomach problems.

Adams' second federal cause of action is similar to his first. In Count II of his Complaint, Adams alleges that Defendants were deliberately indifferent to his serious medical needs. Specifically, Adams contends that his long-term consumption of soy based foods while at the Illinois Department of Corrections has caused him to develop an H. pylori infection.

Adams' state law claims are related to his federal claims. Adams avers that Dr. Talbot, Mary Miller, Louis Shicker, Wexford Health, and the University of Illinois Medical Center are liable to him for medical malpractice or medical negligence and that Keith Anglin, Luke Hartigan,

Ty Bates, and Suzann Bailey are liable to him for the intention infliction of emotional distress. Accordingly, Adams has filed this suit under *42 U.S.C. § 1983* and *28 U.S.C. §1367* seeking injunctive and monetary relief.

## A. Adams has failed to state a federal cause of action.

In order to succeed on his claim that Defendants violated his *Eighth Amendment* rights by failing to provide him with a proper diet, Adams must demonstrate that he is "incarcerated under conditions posing a substantial risk of serious [*4] harm." *Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)*. In the conditions-of-confinement context, an inmate must show "a serious deprivation of basic human needs," *Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)*, or denial of the "minimal civilized measure of life's necessities . . ." *Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)*. Second, he must show that prison officials acted with deliberate indifference to that risk, a subjective inquiry into a prison official's state of mind. *Farmer, 511 U.S. at 838-39*. "[A] prison official cannot be found liable under the *Eighth Amendment* for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id. at 837*. The prison official may be held liable only if he knows an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." *Id. at 847*. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while [*5] no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id. at 838*. Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Shockley v. Jones, 823 F.2d 1068, 1072 (7th Cir. 1987)*.

In the instant case, the Court finds that Adams' complaints regarding a soy-based diet fail to state a claim under the *Eighth Amendment's* prohibition against cruel and unusual punishment. The Seventh Circuit has held that a well-balanced diet that contains adequate nutritional value, despite being cold or poorly prepared, does not violate the Constitution. *Lunsford v. Bennett, 17 F.3d 1574, 1580 (7th Cir. 1994)*(quoting *Smith v Sullivan, 553 F.2d 373, 380 (5th Cir. 1977))*. As to the

allegations made in this case, at least three courts have determined that an inmate's *Eighth Amendment* rights were not violated after he allegedly became ill after eating soy-based foods. *Martin v. Scott, 156 F.3d 578, (5th Cir. 1998)*("The conditions complained of by Martin, including his contention that he was subjected to cruel and unusual punishment when he became ill after being fed Vita-Pro—a soy-based meat substitute—simply do not rise [*6] to the level of cruel and unusual punishment."); *Floyd v. McNeil, 2011 U.S. Dist. LEXIS 150619, 2011 WL 6955839 (N.D. Fla. Dec. 5, 2011)*("The amount of soy, as shown by the relevant evidence, simply cannot be found to violate "contemporary standards of decency," or constitute the denial of "the minimal civilized measure of life's necessities."); *Johnson v. Randle, 2012 U.S. Dist. LEXIS 75080, 2012 WL 1964996, * 9 (S.D. Ill. May 31, 2012)*(finding that the allegations of health problems associated with soy intake do not state a claim for damages where the inmate could not show that defendants knew of the risk of harm); *c.f. Helling v. McKinney, 509 U.S. 25, 36, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)*(holding that the inmate must show that the risk of which he complains is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk").

The Court agrees with these courts that merely being fed a diet based upon soy or soy-based products does not constitute conditions posing a substantial risk of serious harm in violation of an inmate's *Eighth Amendment* rights. *Farmer, 511 U.S. at 834*. Thus, the Court finds that Count I of Adams' Complaint fails to state an *Eighth Amendment* claim based upon the conditions of his confinement, *i.e.*, that [*7] feeding him a soy-based diet violates the *Eighth Amendment*.

Likewise, the Court finds that Count II of Adams' Complaint fails to state a cause of action upon which relief can be granted because his allegations of deliberate indifference to a serious medical need are belied by his own allegations and the attachments to his complaint. *Edwards v. Snyder, 478 F.3d 827, 830 (7th Cir. 2007)*(even a pro se plaintiff may plead himself out of court).

"In order to prevail on a deliberate indifference claim, a plaintiff must show (1) that his condition was 'objectively, sufficiently serious' and (2) that the 'prison officials acted with a sufficiently culpable state of mind." *Lee v. Young, 533 F.3d 505, 509 (7th Cir. 2008)*(quoting *Greeno v. Daley, 414 F.3d 645, 652 (7th Cir. 2005))*;

_Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008)_(same). "A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" _Lee, 533 F.3d at 509_ (quoting _Greeno, 414 F.3d at 653_). "With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct [*8] must be reckless in the criminal sense." _Id.; Farmer, 511 U.S. at 836-37_ ("We hold . . . that a prison official cannot be found liable under the _Eighth Amendment_ for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.").

Here, Adams has not alleged that Defendants were deliberately indifferent or that his medical condition was serious. Indeed, the documents—including medical records—that Adams attached to his Complaint establish that Adams received medical treatment when he sought it, and he received medication for his stomach ailment. To the extent that Adams attempts to tie his deliberate indifference to a serious medical need claim to his soy based diet claim, the Court finds that his claim fails for the reasons given above. Just because Adams complained about a soy based diet, that does not mean that Defendants knew of the risks of a soy based diet to Adams and ignored them.

In addition, Adams has failed to allege properly that an H. pylori [*9] infection is a serious medical condition for purposes of the _Eighth Amendment_. Adams says it is, but the documents attached to his Complaint show otherwise. _Fed. R. Civ. Pro. 10(c); Wynn v. Southward, 251 F.3d 588, 594 (7th Cir. 2001)_(forms to a complaint become part of a complaint for purposes of the court's merit review). The medical information that Adams

attaches to his Complaint demonstrates that H. pylori is an infection that can be treated with antibiotics. According to Adams, he received a prescription for Zantac, but it did not help. This might be so, but the failure of a prescribed medication to work is not a violation of the _Eighth Amendment_. And, because (again, according to the documents attached) the H. pylori infection is present in about half the people in the world, the Court cannot say that it constitutes a serious medical condition for purposes of the _Eighth Amendment. Jackson v. Pollion, 733 F.3d 786, 2013 U.S. App. LEXIS 21983, 2013 WL 5778994, * 3 (7th Cir. Oct. 28, 2013)_(finding that a slight elevation in blood pressure for a short period of time does not constitute a serious medical condition for purposes of the _Eighth Amendment_). Accordingly, the Court finds that Adams has failed to state a claim under [*10] the _Eighth Amendment_ upon which relief can be granted. [1]

**B. The Court declines to exercise supplemental jurisdiction over his state law claims.**

Because the Court has dismissed Adams' federal claims, it declines his invitation to exercise jurisdiction over his state law claims. The Seventh Circuit has explained that, generally, district courts should dismiss, without prejudice, supplemental state law claims once all of the federal claims have been dismissed. _Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999)_. Although exceptions to this general proposition exist, _Wright v. Associated Ins. Cos., Inc., 29 F.3d 1244, 1251 (7th Cir. 1994)_(setting forth the exceptions), none of those exceptions is relevant here. Accordingly, the Court dismisses Adams' supplemental state law claims without prejudice.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiff Bryant Adams' federal claims are dismissed for failure to state a claim upon which relief can be granted pursuant to _Federal Rule of Civil Procedure_

---

[1] Although it does not base its ruling on this defense, the Court posits whether the case would proceed much past the merit review stage anyways (at least as far as Adams' damages claim goes) because Defendants are likely entitled to the qualified immunity defense. "To determine if qualified immunity applies, the courts employ a two-prong test: (1) whether the facts viewed in a light most favorable to the injured party, demonstrate that the conduct of the officers violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred." _Hardaway v. Meyerhoff, 734 F.3d 740, 2013 U.S. App. LEXIS 22386, 2013 WL 5881561, * 2 (7th Cir. Sept. 20, 2013)_(citing _Marion v. Columbia Correctional Inst., 559 F.3d 693, 697 (7th Cir. 2009)_. As one district court has recently noted, although "soy-diet prison litigation is currently en vogue, Plaintiff has made no showing that Defendants knew a soy-heavy diet posed any risk." _Munson v. Gaetz, 957 F. Supp. 2d 951, 2013 U.S. Dist. LEXIS 99468, 2013 WL 3771500, * 3 (S.D. Ill. July 17, 2013)_. In reaching this conclusion, the district court noted that there is no case law finding that soy-rich diets violate the [*11] constitution, and thus, no defendant would be informed that providing a high-soy diet violates a prisoner's constitutional rights. _Id._

2013 U.S. Dist. LEXIS 158632, *10

12(b)(6) and 28 U.S.C. § 1915A. The Court declines to exercise supplemental jurisdiction over Adams' state law claims, [*12] and those claims are dismissed without prejudice. Any further amendment to the Complaint would be futile because Plaintiff's federal claims are not cognizable.

2. This dismissal shall count as one of Plaintiff's three allotted "strikes" pursuant to 28 U.S.C. Section 1915(g).

3. Plaintiff must still pay the full docketing fee even though his case has been dismissed. The agency having custody of Plaintiff shall continue to make monthly payments to the Clerk of Court as directed in the Court's prior Order.

4. If Plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal in forma pauperis should set forth the issues Plaintiff plans to present on appeal. Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal.

5. **This case is, therefore, closed, and the clerk is directed to enter a judgment pursuant to** Federal Rule of Civil Procedure 58. The Clerk of the Court is also directed to record Plaintiff's strike in the three-strike log.

Entered this 6th day of November 2013.

/s [*13] James E. Shadid

JAMES E. SHADID

CHIEF UNITED STATES DISTRICT JUDGE

# *Harris v. Brown*

United States District Court for the Central District of Illinois

September 30, 2014, Decided; September 30, 2014, E-Filed

07-CV-3225

**Reporter**
2014 U.S. Dist. LEXIS 137870; 2014 WL 4948229

LARRY HARRIS, et al., Plaintiffs. v. DR. LOWELL BROWN, et al., Defendants.

**Prior History:** *Harris v. Brown, 2011 U.S. Dist. LEXIS 45763 (C.D. Ill., Apr. 28, 2011)*

**Counsel:** [*1] For Larry G Harris, Dominick Giampaolo, Jeffery Knight, Thomas Juresic, Gilbert Sanabria, Plaintiffs: David G Cox, LEAD ATTORNEY, THE LAW OFFICE OF DAVID G. COX, Columbus, OH.

For Lowell Brown, Dr, Dennis Larson, Adrian Feinerman, also known as Dr Feinerman, Bashirahmed Ameji, also known as Bashir Ameji, Wexford Health Services, Inc, Shau, Medical Physician, Andrea Bowers, Nurse Practitioner, Paula Clawson, Nurse Practitioner, Defendants: Theresa M Powell, LEAD ATTORNEY, HEYL ROYSTER VOELKER & ALLEN, Springfield, IL; Douglass R Bitner, HEYL ROYSTER VOELKER & ALLEN, Springfield, IL.

For Jackie Miller, Administrative Review Board Member, Mary Miller, Michael Randle, Director, Illinois Department of Corrections, James Sledge, Director, Department of Central Management Services, Suzann Griswold, Food/Dietary Services Administrator of IDOC, Keith Anglin, Warden, Danville Correctional Center, J R Walls, Warden, Western Illinois Correctional Center, Donald Gaetz, Warden, Menard Correctional Center, Frank Shaw, Warden, Stateville Correctional Center, Jody Hathaway, Warden, Shawnee Correctional Center, Gregory Schwartz, Acting Warden, Pinckneyville Correctional Center, Nedra Chandler, Warden, [*2] Dixon Correctional Center, Warden Gerardo Acevedo, Warden, Hill Correctional Center, Melody Ford, Administrative Review Board Member, Deborah Fuqua, Health Care Unit Administrator, Western Illinois Correctional Center, Nikki Malley, Health Care Unit Administrator, Menard Correctional Center, Linda Young, Health Care Unit Administrator, Stateville Correctional Center, Sherri Lynn, Health Care Unit Administrator, Shawnee Correctional Center, Crisey Fenton, Health Care Unit Administrator, Pinckneyville Correctional Center, Joyce Palmer, Health Care Unit Administrator, Dixon Correctional Center, Lois Lindorff, Health Care Unit Administrator, Hill Correctional Center, Defendants: Christopher L Higgerson, Lisa A Cook, LEAD ATTORNEYS, ILLINOIS ATTORNEY GENERAL, Springfield, IL.

**Judges:** HAROLD A. BAKER, UNITED STATES DISTRICT JUDGE.

**Opinion by:** HAROLD A. BAKER

# Opinion

The plaintiffs are current or former inmates of the Illinois Department of Corrections. They contend that too much soy is served in the prison food, exposing them to a serious threat to their current and future health. Cross-summary judgment motions are pending on that issue, along with competing motions to strike experts and various other motions.

The Court [*3] has read all of the parties' submissions. In sum, the *Eighth Amendment* standard is a high hurdle, and the plaintiffs' evidence falls short. A jury could not find that the soy in the prison diet presents a substantial risk of serious harm to the plaintiffs' current or future health, even accepting the opinions of the plaintiffs' experts that soy can cause or exacerbate some health problems. The defendants' motions for summary judgment will therefore be granted. A status conference will be scheduled to discuss what issues remain in the case, if any.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In a *§ 1983* case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine

issues of material fact to avoid summary judgment." *McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010)*. At this stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*.

## ANALYSIS

In the case management order of November 16, 2011, the court identified [*4] the following pivotal issues, which are the court's road map for this order:

1. As articulated by plaintiffs' counsel, that while soy is generally regarded as nutritious in limited quantities, in diets that contain soy in large quantities, the soy has a toxic effect on the human body that is a serious threat to the health and safety of the plaintiffs, and the defendants are deliberately indifferent to that harm;

2. The plaintiffs have an allergy to soy products that gives rise to a serious medical need and the defendants are deliberately indifferent to that need;

3. There is an available medical test for a soy allergy that the defendants do not and will not administer to determine if an inmate indeed is allergic to soy.

**I. The plaintiffs have not established that the soy in the prison diet, as a general matter, presents a substantial risk of serious harm to their current or future health absent an existing, serious medical condition that contraindicates soy, as determined by current and generally accepted professional practices**.

"[T]he *Eighth Amendment* 'forbids cruel and unusual punishments; it does not require the most intelligent, progressive, humane, or efficacious prison administration.'" *Lee v. Young, 533 F.3d 505, 511 (7th Cir. 2008)*(perfection was [*5] not required in eliminating exposure of asthmatic inmate to second-hand smoke)(*quoting Anderson v. Romero, 72 F.3d 518, 524 (7th Cir.1995)*(prisons not required to take "the best" approach of instituting universal precautions to prevent the spread of HIV). In order to prevail, the plaintiffs must have evidence that the soy in the prison diet presents a substantial risk of serious harm to their current or future health. *Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)*(being "incarcerated under conditions posing a substantial risk of serious harm" states an *Eighth Amendment* claim).

This case is based on the allegation that the soy served is excessive. Calculating that amount seems like it should be easy, but apparently not so. The two experts differ wildly on their estimates. They do seem to agree that the most precise way to calculate the amount of soy served in the prison would be to take each meal and burn it under controlled conditions for a chemical analysis. (Braunschweig Dep. p. 156.) That was not done.

The plaintiff's expert, Sylvia Onusic, puts the number at 53-72 grams of "soy protein" per day and 55-120 grams of "soy product" per day. (Onusic expert report, d/e 441, p. 1.) But then later in the same paragraph she estimates the amount of soy as "100 grams minimum," though what she means is [*6] not explained. 100 grams of soy *protein* per day? Or, 100 grams of soy *product* per day? A soy "product" has ingredients other than soy, and different soy products contain different amounts of soy protein. (Onusic Dep. p. 70).

Another problem with Ms. Onusic's estimate is that she admits that she included the water weight used to hydrate the textured vegetable protein when she calculated the percentage of textured vegetable protein in an entrée. According to the record, textured vegetable protein is a soy product consisting of about 50% of dry soy protein and the rest of other dry ingredients. Water needs to be added to the dry mixture to hydrate the textured vegetable protein before it is used in recipes, the court presumes much like soaking dried beans in water before using the beans in a recipe.

Ms. Onusic reasons that, because water is required to hydrate the dry textured vegetable protein, the water should be included when calculating the percentage of textured vegetable protein in an entree. This does not make sense. Say one-fourth cup of dry textured vegetable protein has 12 grams of protein. *www.bob-sredmill.com/tvp-textured-veg_protein.html* (nutritional information for Bob's Redmill [*7] High Protein Textured Vegetable Protein). After adding water, the resulting product would weigh more than the textured vegetable protein alone but would still contain 12 grams of protein. Ms. Onusic's approach appears to significantly inflate the percentage of soy product and soy protein in the entrees.

In contrast, the defendants' expert, Carol Braunschweig, puts the number at an average of 16.4 grams of soy protein per day. The primary weakness with Ms. Braunschweig's calculations is her assumption that the

protein content in a given prison entrée matches the protein content listed for the same entree in a research database maintained by the University of Minnesota based on the USDA's food compilations. (Braunschweig Dep. p. 55-56.) Thus, Ms. Braunschweig assumes that the polish sausage served in the prison has the same (or comparable) amount of soy protein as the polish sausage listed in the research database. Ms. Braunschweig admits that her approach is an estimate, but she believes an estimate based on reasonable assumptions. She contends, "So you could argue that there's more or there's less. This is using the best science out there based on the USDA database of foods." (Braunschweig [*8] Dep. p. 97). The plaintiffs also point out that some of Ms. Braunschweig's averages are mathematically incorrect.

Frankly, the court does not have enough information to replicate any of these calculations and therefore cannot truly understand how each expert reached their conclusions. Thankfully, the court does not need to referee this battle of the experts, because even accepting the plaintiffs' higher estimate of 53 to 72 soy protein grams per day, the plaintiffs have not established that this amount presents a substantial risk of serious harm to their present or future health under _Eighth Amendment_ standards.

The plaintiffs do have some evidence that soy protein can be associated with thyroid dysfunction, particularly hypothyroidism and can make it more difficult to treat existing hypothyroidism. Two of the plaintiffs have thyroid disorders, Larry Harris and Gilbert Sanabria. Mr. Harris has already been prescribed a soy-free diet.

For example, a 1965 New England Journal of Medicine article recounts incidences of goiter and hypothyroidism in infants fed soybean formula until iodide was added to the formula. Pinchera, M.D., et al. (1965), Thyroid Refractoriness in an Arhyreotic Cretin Fed Soybean Formula, [*9] N. Eng. Journ. Med. 273:83-87 (1965). That article was a case study of an infant with congenital hypothyroidism who, despite treatment, continued to have hypothyroidism while on soy formula. _Id_. A more recent study confirmed that soy formula can "complicate[] [the] management of congenital hypothyroidism." Conrad, S.C., M.D., et al. (2004), Soy Formula Complicates Management of Congenital Hypothyroidism, _Arch. Dis. Child_, 89:37-40.

The plaintiffs' experts also cite a 1991 study by Japanese researchers suggesting that eating 30 grams

of soybeans every day for three months suppressed thyroid function and caused goiters in healthy persons. Ishizuki Y, et al. (1991), The Effects on the Thyroid Gland of Soybeans Administered Experimentally in Healthy Subjects," _Nippon Naibunpi Gakkai Zasshi_, 67: 622-629. Along the same lines, a 2011 study showed that ingesting 30 grams of soy protein _plus_ 16 milligrams of soy phytoestrogen per day increased by threefold the risk of developing hypothyroidism. Sathyapalna T et al. (2011), The Effect of Soy Phytoestrogen Supplementation on Thyroid Status and Cardiovascular Risk Markers in Patients with Subclinical Hypothyroidism: A Randomized, Double-Blind, [*10] Crossover Study, _J. Clin. Endocrinol. Metab_. 96: 1442-1449.

Another case study showed that taking a soy protein supplement concurrent with a hypothyroid medicine interfered with the effectiveness of the hypothyroid medicine. Spacing the two apart reduced the interference. Bill, DS, et al. (2001), Use of Soy Protein Supplement and Resultant Need for Increased Dose of Levothyroxine, _Endocr. Pract 2001_ May-Jun 7(3):193-4.

In 2006, the American Heart Association issued an advisory concluding that the cardiovascular benefits of soy which had been originally touted had not been confirmed in later studies, despite the federal regulation allowing food manufacturer's to continue touting those benefits. The AHA advisory also concluded that soy had not been proven to prevent certain cancers and evidence on that issue was "meager and cautionary with regard to a possible adverse effect." Nevertheless, the article concludes that, while soy isoflavone supplements were not recommended, soy products like tofu "should be beneficial to cardiovascular and overall health . . . .," particularly if replacing high-fat animal protein. Sacks, M.D. (2006), Soy Protein, Isoflavones, and Cardiovascular Health, [*11] _Journ. Amer. Heart Assoc_. 113:1034-1044.

The parties seem to agree that soy contains oxalate, and that individuals with kidney stones are advised to limit their oxalate exposure in foods. The plaintiffs' expert, William Shaw, PhD, opines that oxalates can cause a host of other problems and, he believes, have caused all of the plaintiffs' ailments, from arthritis, varicose veins, deterioration of the teeth, and heart disease, to thyroid disorders. (Dr. Shaw expert report, d/e 429). However, he also admits that oxalate is found naturally in many foods, not just soy, so there is no way to tell where the oxalate in a person's body comes from.

(Dr. Shaw's Dep. pp. 14-19.) In fact, avoiding all foods with oxalates would be difficult, and the federal government does not require labels to inform consumers how much oxalate is contained in a food. Id.

One of the plaintiff's expert, Dr. Brownstein, a family practitioner, states in his expert report that he advises his patients with thyroid problems to avoid non-fermented soy altogether. (Dr. Brownstein Report, d/e 438, p. 3.) He goes further in his deposition, stating that he tells *all* of his patients to avoid non-fermented soy.[1] Dr. Brownstein opines [*12] that soy is associated with or causes nutritional deficiencies, skin rashes, gastrointestinal problems, and thyroid disorders. He believes that soy should be removed completely from the prison diet. Id. p. 4. Dr. Brownstein bases his opinion on the assumption that the prisoners are receiving 100 grams of soy protein per day, but it is reasonable to assume that his opinion would be the same even if his assumption was the 53-72 grams of soy per day estimated by the plaintiff's expert.

Yet, even accepting these studies and the opinions of the plaintiffs' experts, the most that can be said is that the safety of soy is a topic of current debate and study and has been for some time. That is not enough to find an *Eighth Amendment* violation. More than scientific studies and theories are needed to show a serious risk under *Eighth Amendment* standards. The risk must be one that "society considers . . . so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Helling v. McKinney, 509 U.S. 25, 36, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (7th Cir. 1993)(emphasis in original). "[T]he prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." [*13] Id.

The U.S. Constitution does not require prisons to be trendsetters in nutrition or health. For example, a 1991 class action by prisoners in this Circuit challenging exposure to second-hand smoke did not even survive the notice pleading stage, even though good evidence of the adverse health effects from environmental smoke had existed for years. Steading v. Thompson, 941 F.2d 498, 500 (7th Cir. 1991). Acknowledging that evidence, the Seventh Circuit noted that scientific debate remained, and, in any event, second-hand smoke in the prisons could hardly be considered punishment when exposure to second-hand smoke was common throughout the United States and the world. 941 F.2d at

500. Today, of course, is a different story. Smoking is banned in most public places in Illinois, including prisons. A prisoner challenging exposure to second-hand smoke today would have a much better chance of success, based on current scientific data and current societal norms.

In short, our society today simply does not see soy protein as a risk to the general population, much less a serious risk. To the contrary, the federal government still allows food manufacturers to claim health *benefits* on food labels for foods containing at least 6.25 grams of soy protein per serving. 21 C.F.R. Section 101.82(c)(2)(iii)(A) [*14] . The food label is permitted to boast that "25 grams of soy protein a day, as part of a diet low in saturated fat and cholesterol, may reduce the risk of heart disease." 21 C.F.R. Section 101.82(e)(1). Additionally, the plaintiffs do not seriously dispute that soy is served in schools, is part of some infant formulas, and is, in the defendants' words, "ubiquitous in the American diet." (Braunschweig Aff. para. 8.) A walk down the grocery aisle confirms this.

Someday soy may be widely established as a serious risk to general health and public opinion may change, like it did with exposure to second-hand smoke, but that day is not today. Today, serving soy to prisoners could not be considered cruel and unusual punishment as a matter of law.

In any event, if the court is wrong, then qualified immunity protects the defendants from damages, and injunctive relief could only be granted as to the plaintiffs in this case, not for all IDOC prisons, since this is not a class action.

To defeat qualified immunity from damages, "[a] plaintiff must show, on some level, that a violation of this right has been found in factually similar cases, or that the violation was so clear that a government official would have known that his actions [*15] violated the plaintiff's rights even in the absence of a factually similar case." Lee v. Young, 533 F.3d 505, 512 (7th Cir. 2008)(citation omitted). The plaintiffs offer no case from *any* jurisdiction which concludes that soy presents a substantial risk of serious harm, nor has the court found any case. In fact, the cases this court has found which rule on the merits have either dismissed the claim at the notice pleading stage or have found against the plaintiffs at the summary judgment stage. Adams v. Talbor, 2013 U.S. Dist.

---

[1] The parties seem to agree that non-fermented soy is the kind of soy served in the prison diet.

LEXIS 158632, 2013 WL 5940630 *2 (C.D. Ill.)(dismissing soy claim at merit review stage for failure to state a claim and listing other cases); Smith v. Rector, 2013 U.S. Dist. LEXIS 140359, 2013 WL 5436371 (S.D. Ill.)(prisoner's "vague allegations that the prison meals are nutritionally inadequate or depend too heavily on soy products do not support a constitutional claim."); Hong v. McNeil, 2012 U.S. Dist. LEXIS 19325, 2012 WL 512688 (N.D. Fla. 2012)("The evidence reveals that while prisoners are served food which contains soy, the food is safe, provides no serious health risks, and has been shown to be beneficial to reduce cholesterol and the risk of heart disease.")(citing other cases in Northern District of Florida)[2]; Mitchell v. New York State Dept. of Correctional Services, 2012 U.S. Dist. LEXIS 176209, 2012 WL 6204205 (W.D.N.Y. 2012)(dismissing as frivolous prisoner's claim that soy in diet causes cancer).

**II. The plaintiffs do not have soy allergies, which** [*16] **moots the second and third issues identified in the court's case management order.**

One of the plaintiffs, Larry Harris, asserts that he does have a soy allergy, but the defendants' evidence shows that Harris has tested negative for a soy allergy. (Harris 4/20/07 medical progress note, 457-2, p. 2.) None of the other plaintiffs appear to contend that they have a documented allergy to soy. Consequently, the court believes that issues 2 and 3 identified in the prior case management order are moot. The parties are free to correct the court at the status conference if this is not the case.

**III. What is left of this case is unclear.**

The Court holds today that the plaintiffs have not established that the soy in the prison diet, as a general matter, presents a serious risk of harm to the plaintiffs' current or future health, absent some serious, existing medical condition for which soy is contraindicated according to current generally accepted professional judgment.

The plaintiffs do not have soy allergies, goiter, or kidney stones, but two of the plaintiffs do have thyroid disorders, Larry Harris and Gilbert Sanabria, and the plaintiffs do have some evidence that soy can cause or exacerbate thyroid [*17] problems. Injunctive relief is moot for Mr. Harris who is already receiving a soy free diet, but injunctive relief might be available for Mr. Sanabria, and a damages claim may remain.

The Court does wonder how deliberate indifference can be established if these claims do remain, even accepting the opinions by the plaintiffs' experts. The plaintiffs would still have to prove that the treatment decisions by the doctors were "such a substantial departure from accepted professional judgment that the decisions were not based on professional judgment." Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). The plaintiffs' experts acknowledge that there could be many causes of the ailments suffered by the plaintiffs. A professional difference of opinion on the most likely cause of those ailments and the how the conditions should be treated would not be enough to show deliberate indifference. Duckworth v. Ahmad, 532 F.3d 675, 681 (7th Cir. 2008)(no deliberate indifference where doctor "tried to cure what he thought was wrong . . ., an opinion he arrived at using medical judgment"); Norfleet v. Webster, 439 F.3d 392, 396, 396 (7th Cir. 2006)("[A] difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference.").

However, the issue of deliberate indifference has not yet been addressed by the parties. [*18] Additionally, the complaint also makes out claims for retaliation and negligence. A status hearing will be scheduled to sort through what issues remain.

**IT IS THEREFORE ORDERED:**

1. Defendants' motions for summary judgment are granted (432, 446).

2. Plaintiffs' motion for partial summary judgment is denied (436).

3. The motions to exclude expert reports are denied as moot (434, 444, 445, 447).

4. The motion to extend is denied as moot (450). The Court has considered all the submissions.

5. The motions to strike the internet articles submitted by Wexford, et al., are granted (461, 462). The court has not considered the articles.

6. The motion to join in the case by inmate Coleman is denied (431).

7. A status conference is scheduled for October 30, 2014, at 11:00 a.m. by video conference.

Entered this 30 day of September, 2014.

---

[2]   Unlike this case, the inmates in Hong could choose an alternative meal to avoid the soy.

2014 U.S. Dist. LEXIS 137870, *18

/s/ Harold A. Baker                                          UNITED STATES DISTRICT JUDGE

HAROLD A. BAKER

## *Henley v. Aramark Corp.*

United States District Court for the Northern District of Indiana, South Bend Division

March 10, 2015, Decided; March 10, 2015, Filed

CAUSE NO. 3:15-CV-095 RM

**Reporter**
2015 U.S. Dist. LEXIS 29470

JAMES HENLEY, Plaintiff, v. ARAMARK CORP., and CORIZON MEDICAL CORP., Defendants.

**Subsequent History:** Related proceeding at *Henley v. Aramark Corp., 2015 U.S. Dist. LEXIS 137451 (N.D. Ind., Oct. 8, 2015)*

**Counsel:** [*1] James Henley, Plaintiff, Pro se, Bunker Hill, IN.

**Judges:** Robert L. Miller, Jr., United States District Judge.

**Opinion by:** Robert L. Miller, Jr.

## Opinion

### OPINION AND ORDER

James Henley, a *pro se* prisoner, filed a complaint alleging that the defendants caused him to have hypo-thyroidism by serving him food with a high soy content. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)* (quotation marks and citations omitted). Nevertheless, the court must review prisoner complaints pursuant to *28 U.S.C. § 1915A*.

Though "the safety of soy is a topic of current debate and study and has been for some time[, t]hat is not enough to find an *Eighth Amendment* violation." *Harris v. Brown, 3:07-CV-3225, 2014 WL 4948229, 2014 U.S. Dist. LEXIS 137870 (C.D. Ill. September 30, 2014)* (collecting studies and expert opinions).

Conditions of confinement must be severe to support an *Eighth Amendment* claim; "the prison officials' act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer* [v. Brennan, *511 U.S. 825, 834, 114 S. Ct.* *1970, 128 L. Ed. 2d 811 (1994)]* (quoting *Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981))*. *See also*, *Lunsford v. Bennett, 17 F.3d 1574, 1579 (7th Cir. 1994)* (the *Eighth Amendment* only protects prisoners from conditions that "exceed contemporary bounds of decency of a mature, civilized society."); *Jackson v. Duckworth,] 955 F.2d [21,] 22 [(7th Cir. 1992)]*.

*Morissette v. Peters, 45 F.3d 1119, 1123 (7th Cir. 1995)* (parallel citations omitted). [*2] "An objectively sufficiently serious risk is one that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss, 384 F.3d 879, 882 (7th Cir. 2004)* (quotation marks and citations omitted). "[N]ot every deviation from ideally safe conditions constitutes a violation of the constitution." *French v. Owens, 777 F.2d 1250, 1257 (7th Cir. 1985)* (quotation marks and citation omitted.)

Mr. Henley's soy claim is similar to arguments raised more than 25 years ago alleging that smoking in prison constituted an *Eighth Amendment* violation. In that case, the Seventh Circuit explained that:

Secondary tobacco smoke is common in offices, restaurants, and other public places throughout the United States and the rest of the world. No one supposes that restaurateurs who allow smoking are subjecting their other patrons to "punishment", or desire to harm them. The guards and administrators who breathe smoky air in the prison are not punishing themselves. No one would suppose, either, that the gentlemen tobacco farmers who wrote and adopted the *eighth amendment* could have conceived of smoke as punishment. Evidence since 1791 presents tobacco in a different light, but debate persists about how severe the effects of secondary smoke may be.

*Steading v. Thompson, 941 F.2d 498, 500 (7th Cir. 1991)*.

2015 U.S. Dist. LEXIS 29470, *3

Today, foods containing soy [*3] are widely consumed and federal regulations permit food labels to advertise the health benefits of consuming food containing soy. *See 21 C.F.R. § 101.82.* As such, there is no general consensus that soy poses a health hazard, much less an unreasonable one. Nevertheless, to the extent that soy products pose a health risk, it is a risk voluntarily taken by millions of Americans every day. Thus, like slippery floors, exposing inmates to such risks does not state an *Eighth Amendment* violation. See *Reynolds v. Powell,* 370 F.3d 1028, 1031 (10th Cir. 2004) (collecting cases) ("[W]hile the standing-water problem was a potentially hazardous condition, slippery floors constitute a daily risk faced by members of the public at large. Federal courts from other circuits have therefore consistently held that slippery prison floors do not violate the *Eighth Amendment*.").

For the foregoing reasons, this case is DISMISSED pursuant to *28 U.S.C. § 1915A.*

SO ORDERED.

ENTERED: March 10, 2015

/s/ Robert L. Miller, Jr.

Judge,

United States District Court

## *Riley-El v. Godinez*

United States District Court for the Northern District of Illinois, Eastern Division

July 27, 2015, Decided; July 27, 2015, Filed

No. 13 C 8656

**Reporter**
2015 U.S. Dist. LEXIS 98567

WILLIAM RILEY-EL (B-3069), Plaintiff, v. SALVADOR GODINEZ, et al., Defendants.

**Counsel:** [*1] William Riley-El, Plaintiff, Pro se, Pontiac, IL.

For Salvador Godinez, Director, G. Taylor, Former Director, M. Randle, Former Director, James P. Sledge, Director of CMS, Louis Schicker, Medical Director of IDOC, Suzann Bailey, Food/Dietary Services Administrator, Warden Michael Lemke, Warden, Marcus Hardy, Former Warden, Terry McCann, Former Warden, Frank Shaw, Former Warden, Ramos, Former Warden, Dominguez, Former Warden, D. Battagia, Former Warden, Briley, Former Warden, T. S. Keen, ARB Member, Defendants: Jennifer Marie Lutzke, LEAD ATTORNEY, Office of the Illinois Attorney General, Chicago, IL.

For Wexford Health Sources, Inc., Arthor Funk, Regional Administrator, Parathasarathi Ghosh, On Site Medical Director - former, Dr Lawrence Ngu, Medical Physician, Andrew Tilden, Medical Physician, Evaristo Aguinaldo, Medical Physician, Liping Zhang, Medical Physician, Richard Schute, Medical Physician, Angela Richardson, Medical Physician, Catalino Bautista, Medical Physician, S. Mahone, Medical Physician, S. Baker, Medical Physician, Ronald Schaefer, Medical PhysicianImhotep Kevin A. Carter, Medical Physician, Defendants: Michael R. Slovis, LEAD ATTORNEY, Cunningham, Meyer & Vedrine, Chicago, [*2] IL; Joel Matthew Koppenhoefer, Cunningham, Meyer & Vedrine PC, Chicago, IL.

For Saleh Obaisi, M.D., Defendant: Joel Matthew Koppenhoefer, Cunningham, Meyer & Vedrine, Chicago, IL.

For Randy Pfister, Pontiac Correctional Center Warden, Service List, Defendant: Illinois Department of Corrections, Chicago, IL; Prisoner Correspondence 6 - Internal Use Only.

**Judges:** Joan B. Gottschall, United States District Judge.

**Opinion by:** Joan B. Gottschall

# Opinion

### MEMORANDUM OPINION AND ORDER

Pro se prisoner William Riley-El filed suit pursuant to *42 U.S.C. § 1983* alleging deliberate indifference to his serious medical needs and unconstitutional conditions of confinement due to a high-soy diet that he claims is injurious to his health. Riley-El's complaint (which is eighty-two pages, including exhibits) names thirty-four defendants. Three groups of defendants have filed motions to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)*: (1) former Stateville wardens Michael Lemke, Anthony Ramos, Terry McCann, Frank Shaw, and Deirdre Battaglia and Illinois Department of Corrections ("IDOC") Director Salvador Godinez (Dkt. 25) (the "Lemke Motion to Dismiss"); (2) Suzann Bailey (Stateville's dietary services administrator), Marcus Hardy (another former Stateville warden), Thomas Keen [*3] (a member of the Administrative Review Board), Louis Shicker (IDOC's medical director), and former IDOC directors Michael Randle and Gladyse Taylor (Dkt. 85) (the "Bailey Motion to Dismiss"); and (3) former IDOC wardens Briley and Dominguez, joined by former IDOC warden James Sledge (Dkt. 109) (the "Briley Motion to Dismiss").

For the following reasons, the motions are granted in part and denied in part. Specifically, to the extent detailed below, Riley-El may proceed with his *Eighth Amendment* claims based on treatment provided for his kidney condition and the provision of a diet containing soy despite his alleged soy allergy and the allegedly negative impact that a soy-containing diet has on his kidney condition. All of Riley-El's deliberate indifference claims based on the alleged general risks of a soy-based diet, in the absence of an allergy or a medical condition for which soy is contraindicated, are dismissed. All

2015 U.S. Dist. LEXIS 98567, *4

claims against Godinez, Shicker, Taylor, Randle, Sledge, and Bailey are dismissed pursuant to *Fed. R Civ. P. 12(b)(6)*. All claims against Walker are dismissed pursuant to *Fed. R. Civ. P. 41(b)*. The remaining defendants shall answer the complaint by August 17, 2015. The court sua sponte names Pontiac Correctional Center Warden [*4] Randy Pfister as a defendant for the purposes of Riley-El's claim for injunctive relief, and the U.S. Marshal is appointed to serve Pfister. The court recruits counsel to represent Riley-El in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37. A separate order recruiting counsel will follow.

## I. BACKGROUND

Given Riley-El's pro se status, the court will construe his filings liberally. *See Ambrose v. Roeckeman, 749 F.3d 615, 618 (7th Cir. 2014)*. The following facts are taken from Riley-El's complaint and will be accepted as true for the purposes of this motion. *See Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 946 (7th Cir. 2013)*.

Riley-El challenges the soy-rich diet he allegedly receives as an inmate in IDOC custody. He contends that he is given an average of eight servings of soy each week and that unless he can purchase food from the commissary, his soy consumption exceeds 25 grams per day. Compl. pp. 27, 29. He alleges that a high-soy diet is generally unhealthful and can lead to thyroid disease, digestive ailments, and "immune system breakdown" that can cause an increased incidence of colds and flu, cancer, and other chronic conditions. *Id.* p. 24.

In 2011, Riley-El was diagnosed with polycystic kidney disease ("PKD"). According to Riley-El, PKD is an inherited disorder in which clusters [*5] of cysts develop in the kidneys, with high-blood pressure as a common complication. Riley-El blames his PKD on his consumption of soy. First, he asserts that PKD is hereditary but no one in his family has PKD. He thus reasons that consuming soy must have caused his PKD. Second, he represents that he is allergic to soy.[1]

According to Riley-El, his soy allergy, combined with his ingestion of prescribed pain relievers, caused him to develop PKD.

In addition, Riley-El challenges the care provided for his PKD. He alleges that he filed numerous grievances over the years alleging that he was denied medical treatment for various health problems. *Id.* p. 8. In July 2013, a doctor at UIC Medical Center told Riley-El that his kidneys were functioning at 15 percent. *Id.* p. 10-11. Riley-El has had high blood pressure for years, along with other symptoms of kidney disease, including rising creatinine levels (which can indicate kidney damage), lower back pain, knee pain, headaches, nose bleeds, severe stomach pain, irritable bowel syndrome, [*6] constipation and/or diarrhea, acne, and severe headaches. *Id.* pp. 9-11, p. 27 at ¶ 44. Despite these complaints, he contends that he was not sent for an in-person appointment with a specialist, although he also alleges that he saw "a doctor over a television screen" in addition to the medical care he received at Stateville and alleges elsewhere in his complaint that he saw a kidney specialist at UIC Medical Center in 2013. *Id.* pp. 10-11.

Dr. Obaisi, the medical director at Stateville Correctional Center, prescribed Riley-El a "renal diet" consisting of soy-based meat despite Riley-El's soy allergy. Riley-El asked Dr. Obaisi to prescribe a soy-free diet, but Dr. Obaisi told him that this is not an option at IDOC facilities. *Id.* p. 11-12.

Riley-El also challenges care that Wexford and its employees (the "Medical Defendants") provided.[2] He alleges generally that all of the Medical Defendants knew that he had filed grievances about his high-soy diet (*id.* p. 33 at ¶ 80) and knew about his symptoms but failed to provide appropriate medical treatment (*id.* p. 34 at ¶¶ 81, 82). Next, despite Riley-El's allegation that Dr. Obaisi told him that IDOC does not allow inmates to receive a soy-free diet, he alleges that the Medical Defendants knew about [*7] the risks associated with a high-soy diet and had the ability to prescribe an alternative diet, but failed to do so (*id.* ¶¶ 83-85). In

---

[1]  Riley-El's complaint does not specify whether he was diagnosed with a soy allergy after testing or whether he believes that he is allergic to soy based on symptoms that he has experienced.

[2]  The Medical Defendants are Wexford Health Sources, Inc., Arthur Funk (identified as Wexford's regional administrator), Dr. Parthasarathi Ghosh (Stateville Correctional Center's former medical director), and Wexford doctors Lawrence Ngu, Andrew Tilden; Evaristo Aguinaldo, Liping Zhang, Richard Shute, Catalino Bautista, S. Mahone, Ronald Schaefer, Imhotep "Kevin" Carter, Saleh Obaisi, D. Davis, S. Baker, and Angela Richardson. The Medical Defendants who have been served filed a motion for a more definite statement. The court has denied that motion in a separate order issued contemporaneously with this opinion.

2015 U.S. Dist. LEXIS 98567, *7

addition, he contends that Wexford's purported official policy of allowing its physicians to prescribe alternative diets for prisoners is inconsistent with its actual practice of refusing to allow its physicians to do so. *Id.* ¶ 87.

Riley-El further contends that the Medical Defendants deliberately provided ineffective medical treatment. He asserts that he should have been diagnosed with PKD earlier and that his continued consumption of soy caused [*8] his health to be in a "deteriorated state." (*Id.* p. 37 at ¶ 94.) He also alleges that his soy-rich diet is responsible for his current kidney function of 15 percent. *Id.* p. 36 at ¶¶ 92-93. He further contends that he has not been provided with proper treatment since his diagnosis with PKD. *Id.* ¶ 95.

After screening Riley-El's complaint, the court allowed him to proceed with *Eighth Amendment* claims of deliberate indifference to his serious medical needs and the alleged failure to provide a nutritionally adequate diet. Additional facts will be discussed as necessary below.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to *Rule 12(b)(6)*, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (citing *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555-56*. For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011)*.

## III. DISCUSSION

### A. RILEY-EL'S CLAIM THAT A SOY-BASED DIET VIOLATES THE *EIGHTH AMENDMENT* EVEN IN THE ABSENCE OF [*9] AN ALLERGY OR MEDICAL CONDITION FOR WHICH SOY IS CONTRAINDICATED

Riley-El contends that even setting aside his alleged allergy to soy and his assertion that his medical condition contraindicates the consumption of soy, the soy-rich diet given to IDOC inmates violates the *Eighth Amendment* because it is generally unhealthy. All three

groups of defendants who filed motions to dismiss argue that Riley-El's allegations about the generalized risk of soy fail to state an actionable conditions of confinement claim.

The *Eighth Amendment* entitles prisoners to humane conditions of confinement that provide for their "basic human needs." *Rice v. Corr. Med. Servs., 675 F.3d 650, 664 (7th Cir. 2012)* (quoting *Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)*). This includes "adequate food, clothing, shelter, and medical care." *Sain v. Wood, 512 F.3d 886, 893 (7th Cir. 2008)* (quoting *Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)*). However, the *Eighth Amendment* neither requires "the most intelligent, progress, humane, or efficacious prison administration," *Oliver v. Deen, 77 F.3d 156, 161 (7th Cir. 1996)*, nor demands that prison officials provide inmates with "more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTella, 255 F.3d 470, 472 (7th Cir. 2001)*. To state a claim for unconstitutional conditions of confinement, Riley-El must adequately allege that: (1) he suffered a sufficiently serious deprivation of a basic human need; and (2) the defendants acted with deliberate indifference [*10] to his conditions of confinement. *Sain, 512 F.3d at 893-94*.

The defendants argue that Riley-El cannot establish a sufficiently serious deprivation based on a soy-rich diet because a number of courts have rejected inmates' claims that this type of diet put them at a serious risk of harm. For example, in *Harris v. Brown, No. 07 CV 3225, 2014 U.S. Dist. LEXIS 137870, at *12-13 (C.D. Ill. Sept. 30, 2014)* (Baker, J.), a group of prisoners claimed that excessively high amounts of soy in Illinois' prison food threatened their health. The court held that a risk violates the *Eighth Amendment* if it is "one that 'society considers . . . so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" *Id.* (quoting *Helling v. McKinney, 509 U.S. 25, 36, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (7th Cir. 1993)*). Noting the ubiquitousness of soy in the American diet, as well as the fact that the government allows food manufacturers to tout the benefits of soy on food labels, the court found that "society today simply does not see soy protein as a risk to the general population, must less a serious risk." *Id. at *13-14*. It then granted the defendants' motion for summary judgment, explaining that even if it accepted the opinions of the plaintiffs' experts, the most that could be said was that the "safety of soy is a topic of current debate and study," which is not enough to establish an

2015 U.S. Dist. LEXIS 98567, *10

*Eighth Amendment* violation. *Id. at *12*; [*11] *see also Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998)* (per curiam) (holding that prisoner's claim that he was subjected to cruel and unusual punishment because he became ill after consuming a soy-based meat substitute "simply does not rise to the level of cruel and unusual punishment"); *Adams v. Talbor, No. 13-2221-JES-JAG, 2013 U.S. Dist. LEXIS 158632, at *5-7 (C.D. Ill. Nov. 6, 2013)* (Shadid, J.) (dismissing prisoner's claim that soy-based diet caused him to experience stomach problems); *Smith v. Rector, No. 13-cv-837-GPM, 2013 U.S. Dist. LEXIS 140359, at *10-11 (S.D. Ill. Sept. 30, 2013)* (Murphy, J.) (dismissing claim based on "vague allegations" that prison meals contained too much soy); *Hong v. McNeil, No. 4:10cv155-SPM/WCS, 2012 U.S. Dist. LEXIS 19325, at *15-16 (N.D. Fla. Jan. 6, 2012)* (Sherill, J.) (recommending the grant of summary judgment to prison officials, as the record contained no evidence that soy products caused harm, much less that prison officials were indifferent to any risk of harm); *Mitchell v. New York State Dep't of Corr. Servs., No. 6:06-CV-6278 (MAT), 2012 U.S. Dist. LEXIS 176209, at *35-36 (W.D.N.Y. Dec. 12, 2012)* (Telesca, J.) (dismissing as frivolous prisoner's claim that a soy-based diet causes cancer).

To state a claim for an *Eighth Amendment* violation, the challenged condition must amount to an "extreme deprivation," *Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)*, and "pose[] an unreasonable risk of serious damage to [the inmate's] future health," *Helling, 509 U.S. at 35*. The plaintiff must also show that society has chosen not to tolerate the risk at issue. [*12] *Helling, 509 U.S. at 36*. Finally, the plaintiff must demonstrate that the defendants acted with a "sufficiently culpable state of mind" in exposing him to the risk. *Hudson, 503 U.S. at 8*.

Riley-El's allegations about the purported general unhealthfulness of soy appear to track the allegations in *Harris, 2014 U.S. Dist. LEXIS 137870*. Indeed, Riley-El has included articles relating to that lawsuit as exhibits to his complaint. However, as the cases collected above demonstrate, the alleged risks posed by consuming a soy-rich diet do not rise to the level of an *Eighth Amendment* violation. Therefore, Riley-El's claim that the provision of a soy-based diet is a condition of confinement that poses a substantial risk of serious harm is dismissed.

Alternatively, the court finds that defendants would be entitled to qualified immunity as to any claim based on the alleged general health risks of consuming soy. Qualified immunity shields government officials from liability where "their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff, 734 F.3d 740, 743 (7th Cir. 2013)* (quoting *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982))*. Courts use a two-part test to determine whether a defendant is entitled to qualified immunity: "(1) whether the facts, viewed in a light most favorable to the injured party, [*13] demonstrate that the conduct of the [defendants] violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred." *Id. at 743* (citing *Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009))*. A court has discretion to consider either element of the test first. *Pearson, 555 U.S. at 236*.

Qualified immunity can be the basis of a *Rule 12(b)(6)* dismissal when the allegations of the complaint, taken as true, fail to allege the violation of a clearly established constitutional right. *McGreal v. AT&T Corp., 892 F. Supp. 2d 996, 1012 (N.D. Ill. 2012)*; *see Doe v. Vill. of Arlington Heights, 782 F.3d 911, 916 (7th Cir. 2015)*. The plaintiff has the burden of establishing that the constitutional right at issue was clearly established at the time of the events alleged in his complaint. *Doe, 782 F.3d at 915*. Although a plaintiff need not cite to a case that is directly on point, he must demonstrate either that a court has upheld the purported right in a factually similar case or that the alleged misconduct constituted an obvious violation of a constitutional right. *Id.* (citing *Lunini v. Grayeb, 395 F.3d 761, 769 (7th Cir. 2005))*.

The court has reviewed numerous cases brought by prisoners who challenged the soy content of the diets they received while in custody. It has not found cases concluding that soy-based diets pose a serious risk to the health of prisoners absent an allergy or another condition for which soy is contraindicated. Similarly, [*14] it has not found cases holding that soy is either generally nutritionally inadequate or is harmful when ingested over a threshold amount. Nor has Riley-El cited any such cases. Given the absence of precedent finding that it is unconstitutional to provide inmates with a soy-based diet if soy is not medically contraindicated, no defendant would be on notice that providing such a diet violates an inmate's rights. *See Munson v. Gaetz, 957 F. Supp. 2d 951, 954 (S.D. Ill. 2013)*. For this second reason, Riley-El cannot proceed with his claim that the defendants were deliberately indifferent to the alleged generalized risks of a soy-based diet.

**B. Riley-El's Claim That a Soy-Based Diet Violates the *Eighth Amendment* Because He is Allergic and Has Medical Conditions for Which Soy Is Contraindicated**

Although the provision of a soy diet, as a general matter, does not violate the *Eighth Amendment*, it may still amount to cruel and unusual punishment if a plaintiff has a serious medical condition for which soy is contraindicated. *See Harris, 2014 U.S. Dist. LEXIS 137870, at *16*; *see also Munson v. Shearing, No. 15-cv-00062-MJR, 2015 U.S. Dist. LEXIS 9123, at *2-8 (S.D. Ill. Jan. 27, 2015)* (Reagan, J.) (allowing prisoner to proceed with claim that prison officials subjected him to unconstitutional conditions of confinement because they refused to test him for a soy allergy or provide an alternative [*15] diet).

Riley-El alleges that he is allergic to soy and has experienced a facial rash, acne, elevated blood pressure, abdominal pain, and diarrhea as a result of consuming soy. *Id.* at pp. 10-11, Compl. Ex. 3 at pp. 52-53. In a grievance attached to his complaint, Riley-El alleges that following his diagnosis with PKD — which appears to be a serious medical condition — an outside physician told him to reduce his soy intake and to eat more green vegetables. Compl. Ex. 2 at pp. 44-45. At the motion to dismiss stage, the court cannot and will not determine if disregarding this advice violates the *Eighth Amendment*. But for present purposes, the court accepts Riley-El's allegation that a doctor told him to reduce his intake of soy due to his PKD.

The court notes, however, that Riley-El's contention that his PKD was caused by a combination of an allergic reaction to soy and the effects of prescription pain medication appears to be speculative. The same can be said for his claim that eating soy despite his soy allergy caused him to develop hypertension. Nevertheless, Riley-El alleges that he is consuming too much soy in light of his current health conditions, including PKD. His abdominal pain, diarrhea, and facial rash could [*16] plausibly be the result of a soy allergy. Riley-El alleges that he brought these concerns to the attention of the defendant prison officials, who failed to act.

A more fully developed record may belie Riley-El's claim that his diet exacerbates his alleged soy allergy or medical conditions in a way that creates an unreasonable risk of serious damage to his health. However, his allegations about the effect of consuming soy in light of his soy allergy and PKD are sufficient to survive a motion to dismiss. These claims may proceed against the defendants specified below.

**C. Allegations About the Defendants' Personal Involvement**

*Section 1983* liability is predicated on fault, so to be liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001)* (quoting *Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001)*). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Ames v. Randle, 933 F. Supp. 2d 1028, 1037-38 (N.D. Ill. 2013)* (quoting *Sanville, 266 F.3d at 740*). To be held liable for the conduct of their subordinates, supervisors must "know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle, 599 F.3d 583, 588 (7th Cir. 2010)* (quoting [*17] *Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)*).

The *Eighth Amendment* requires prison officials to provide humane conditions of confinement, including a nutritionally adequate diet and adequate medical care. *See, e.g., Farmer, 511 U.S. at 832*. Riley-El alleges that his diet and medical care were inadequate. To state a valid *Eighth Amendment* claim, Riley-El must allege facts that, if true, would establish that: (1) he suffered an objectively serious deprivation; and (2) each defendant acted with deliberate indifference to that deprivation. *Townsend v. Fuchs, 522 F.3d 765, 773 (7th Cir. 2008)*. "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.; see also Farmer, 511 U.S. at 837* (deliberate indifference has an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need).

Generally, when a prisoner is under the care of a physician, a non-medical defendant, such as a warden, may rely on the expertise of medical personnel. *Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011)*; *see also Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009)* (a prison warden is "entitled to relegate to the prison's medical staff the provision of good medical care"). However, "non-medical officials [*18] can 'be chargeable

with deliberate indifference' where they have reason to believe (or actual knowledge) that prison doctors are mistreating (or not treating) a prisoner.'" *Arnett, 658 F.3d at 755* (quoting *Hayes v. Snyder, 546 F.3d 516, 525 (7th Cir. 2008))*.

The court will discuss Riley-El's allegations about the defendants' personal involvement by considering the three motions to dismiss in turn.

## 1. The Lemke Defendants

Lemke, Ramos, McCann, Shaw, and Battaglia are former wardens of Stateville Correctional Center, and defendant Godinez is IDOC's former director. As discussed below, Riley-El has sufficiently alleged the personal involvement of Lemke, Ramos, McCann, Shaw, and Battaglia but not Godinez.

### a. Lemke, Ramos, McCann, Shaw, and Battaglia

Riley-El has grouped his allegations against former Stateville wardens Lemke, Ramos, McCann, Shaw, and Battaglia together. He alleges that these defendants were responsible for resolving inmate grievances and that they rejected his grievances requesting a soy-free diet and medical treatment. According to Riley-El, each of these defendants knew that he had complained that his soy-containing diet was causing him injury, knew that the diet was potentially harmful to him given his soy allergy and medical condition, and had [*19] the authority to provide him with an alternative diet but failed to do so. Riley-El also generally alleges that he has not received adequate and necessary treatment for his serious medical needs. In response, Lemke, Ramos, McCann, Shaw, and Battaglia argue that Riley-El's claims against them are premised on their status as high-ranking IDOC officials, rather than personal responsibility for an alleged violation of his rights.

Although not every person who receives a complaint of an alleged constitutional violation is liable under *§ 1983*, *see Burks, 555 F.3d 595*, Lemke, Ramos, McCann, Shaw, and Battaglia are not merely public officials. Given their positions as warden and their alleged responsibility to oversee the grievance resolution process, it is reasonable to infer that they could be aware of Riley-El's grievances and could have investigated his complaints or intervened. A more fully developed record may demonstrate that these defendants were not, in fact, involved in resolving Riley-El's grievances and could not have known about

them. The court also observes, as it did in relation to the Medical Defendants' motion for a more definite statement, that the sprawling nature of Riley-El's complaint, which challenges [*20] medical care he received starting in 2005, means that some of his claims may be time-barred. However, the statute of limitations is an affirmative defense, and the court cannot determine its applicability based on the present record.

Accordingly, Riley-El has adequately alleged that Lemke, Ramos, McCann, Shaw, and Battaglia were aware, through his grievances, that he claimed that he was receiving a medically inappropriate diet and inadequate treatment for serious medical needs, including PKD and elevated blood pressure, but failed to respond reasonably. The motion to dismiss based on these defendants' alleged lack of personal involvement is denied.

### b. Godinez

In his lengthy complaint, Riley-El does not allege that Godinez was personally involved in the denial of medical care or a soy-free diet. Riley-El's only mention of Godinez appears to be his allegation that Godinez is the "Director of an administrative agency of the State" that is responsible for administering Illinois' prisons. Compl. p. 13 at ¶ 3. Accordingly, Riley-El's claims against Godinez are dismissed.

## 2. The Bailey Defendants

The next group of defendants consists of Suzann Bailey (Stateville's dietary services administrator), [*21] Marcus Hardy (another former Stateville warden), Thomas Keen (a member of the Administrative Review Board), Louis Shicker (IDOC's medical director), and former IDOC directors Michael Randle and Gladyse Taylor.

### a. Riley-El's Response to the Bailey Motion to Dismiss

In his response to the Bailey motion to dismiss, Riley-El asserts that "some of [the Bailey] defendants reviewed [and] denied grievances relating to medical treatment submitted by Plaintiff." Pl.'s Resp., Dkt. No. 107, at 2. This assertion does not appear in Riley-El's lengthy complaint. It is improper to amend a complaint via a response to a motion to dismiss. *See Agnew v. NCAA, 683 F.3d 328, 348 (7th Cir. 2012)*. In any event, even if this assertion about actions taken by "some" of the

Bailey defendants was properly before the court, it does not support the inference that Bailey, Hardy, Keen, Shicker, Randle, and Taylor each denied grievances about Riley-El's medical care. See _Twombly, 550 U.S. at 555-56_. This is especially true given that this group of defendants includes individuals who do not appear to be involved in the grievance process, such as Bailey (Stateville's dietary services administrator) and Shicker (IDOC's medical director).

While the court will construe Riley-El's complaint liberally, [*22] it will not and cannot craft factual allegations for him. Riley-El is no stranger to prisoner civil rights cases as the court's records reflect that he has filed ten prisoner civil rights cases in this district. To the extent that Riley-El wishes to provide more detailed factual allegations directed at specific defendants, he must file a motion seeking leave to amend his complaint that contains this information. Hence, the court will not consider the assertion about "some" of the Bailey defendants made in Riley-El's response when evaluating the sufficiency of the allegations in the complaint directed at the Bailey defendants.

**b. Bailey**

Riley-El describes Bailey as IDOC's dietary services administrator. Based on the IDOC website, he alleges that Bailey served on a committee that planned a master menu for IDOC that started in 2004 and that she consults with dietary and prison staff at IDOC facilities concerning inmate's diets. Compl. p. 15 at ¶ 7. Riley-El's complaint contains no indication that Bailey had any personal involvement with his request for an alternative diet or his grievances about his diet and medical care. As Riley-El's claims against Bailey appear to be based on her overall [*23] responsibility for the menu served at IDOC facilities, the claims against her are dismissed.

**c. Hardy**

Hardy is a former warden at Stateville. As with the other former wardens discussed above (Lemke, Ramos, McCann, Shaw, and Battaglia), assuming that the statute of limitations does not bar Riley-El's claim against Hardy, it is reasonable to infer that Hardy could be aware of Riley-El's grievances and could have intervened or at least investigated his complaints. Riley-El may proceed with his claims against Hardy.

**d. Keen**

Riley-El alleges that Keen is a member of the Administrative Review Board and that he was

responsible for reviewing and investigating his grievances. Compl. p. 16, 9. Accepting these allegations as true, Keen "presumably personally reviewed and investigated the complaint prior to denying [Riley-El's] request and therefore was likely aware of the prison doctors' failure to provide [Riley-El] with adequate medical care." See _Foster v. Ghosh, No. 11 C 5623, 2013 U.S. Dist. LEXIS 100958, at *13-14 (N.D. Ill. July 19, 2013)_. This is sufficient to allow the court to infer that Keen "was personally involved and aware of the constitutional deprivation." _Id._ Discovery is necessary to flesh out any actions Keen may have taken with respect to Riley-El's grievance but Riley-El's [*24] claim against Keen is sufficient to survive a motion to dismiss.

**e. Shicker**

Riley-El alleges that Shicker is IDOC's medical director. In his complaint, Riley-El references IDOC's website, which — according to Riley-El — states that Shicker is responsible for setting standards for the delivery of inmate healthcare, evaluating the preventative, public, mental health, primary, and secondary care provided to inmates in IDOC custody, and the policies and procedures governing the provision of care at IDOC facilities. Elsewhere, Riley-El generally alleges that groups of defendants, including Shicker, knew about his soy allergy and his complaints about his care. Even construed generously, there is no discernable basis for drawing an inference that Shicker was aware of Riley-El's soy allergy, soy-containing diet, and medical situation.

Moreover, Riley-El's only specific allegations about Shicker relate to his responsibilities as IDOC's medical director, and none of these responsibilities have any discernable connection to Riley-El's specific situation. The bald allegation that Shicker knew about Riley-El's medical status and care and was involved in denying him the treatment and soy-free diet [*25] that Riley-El sought is, therefore, speculative. See _Twombly, 550 U.S. at 555-56_. A "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." _Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010)_. Riley-El's allegations about Shicker fail to meet this standard so his claims against Shicker are dismissed.

**f. Randle and Taylor**

Randle and Taylor appear only in the introductory section of Riley-El's complaint where he lists the

2015 U.S. Dist. LEXIS 98567, *25

defendants and their titles. Riley-El alleges that Randle and Taylor are former directors of IDOC and describes them (and multiple other defendants) as "state agency" defendants. Compl. pp. 2 and 13 at ¶ 3. As with Shicker, Riley-El's blanket assertions later in the complaint to the effect that all of the defendants were involved in the denial of medical care and a soy-free diet are speculative. See _Twombly, 550 U.S. at 555-56_; _Swanson, 614 F.3d at 404_. The claims against Randle and Taylor are dismissed.

### 3. The Briley Defendants

The Briley defendants consist of Briley and Dominguez (former wardens of Stateville) and Sledge, the director of Central Management Services for the State of Illinois.

#### a. Briley and Dominguez

The above discussion about the other warden defendants applies equally to Briley and Dominguez. Riley-El has adequately stated [*26] a claim against these defendants.

#### b. Sledge

Riley-El's allegations about Sledge are based on information from the Central Management Services website. Riley-El alleges that Sledge is employed by an entity that is responsible for procuring food products that are given to IDOC inmates. Compl. p. 13-14 at ¶ 4. Riley-El does not contend that Sledge was personally involved in the alleged deprivation of his rights. There is no discernable basis to infer that Sledge would play any role in reviewing inmate complaints or grievances so Sledge's role in the IDOC food procurement chain cannot amount to a constitutional violation. Therefore, the claims against Sledge are dismissed.

### D. Riley-El's Request for Injunctive Relief

In his complaint, Riley-El seeks an injunction requiring state officials to provide him with a soy-free diet and treatment by a renal specialist.[3] Compl. p. 38. At the

time he submitted his complaint, Riley-El was housed at Stateville Correctional Center; he has since been transferred to Pontiac Correctional Center. All of the defendants contend that Riley-El's claims for injunctive relief are moot as a result of his transfer. No officials from Pontiac Correctional Center are named [*27] as defendants.

If a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred, the prisoner's claim becomes moot. See _Lehn v. Holmes, 364 F.3d 862, 871 (7th Cir. 2004)_. In his response brief, Riley-El contends that he is still being served a soy-based diet despite the move to Pontiac.[4] Because the soy-based diet is not a condition particular to Stateville, Riley-El's claims are not moot.

However, since Riley-El is now housed at Pontiac, he has not named a proper defendant for his claim for injunctive relief. The court takes judicial notice that the current warden [*28] at Pontiac is Randy Pfister. Pfister is a proper defendant for Riley-El's request for injunctive relief. See _Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011)_. On its own motion, Pfister is added as a defendant. The court appoints the U.S. Marshal to effect service on Pfister.

### E. Roger Walker

Roger Walker is an IDOC director. On April 24, 2015, the court directed Riley-El to return a service form for Walker, who had not yet been served, within 28 days if he wished to proceed with his claims against this defendant and stated "[i]f no service form is returned, this Defendant will be dismissed for failure to prosecute pursuant to _Fed. R. Civ. P. 41(b)_." Dkt. 119. It is now three months later and Riley-El has not returned the service form. Thus, the claims against Walker are dismissed for want of prosecution. See _Fed. R. Civ. P. 41(b)_.

### F. Recruitment of Counsel

The court may, in the exercise of its discretion, recruit counsel to represent indigent litigants. _Dewitt v. Cori-_

---

[3]  Riley-El seeks additional injunctive relief, such as an order prohibiting IDOC from serving soy-containing food to inmates. As the court has dismissed Riley-El's claim that a diet containing soy-containing food is unconstitutional barring an allergy or a medical condition that contraindicates soy, the court will not discuss his corresponding requests for injunctive relief.

[4]  A motion to dismiss based on the contention that the plaintiff's claim is moot is based on **_Rule 12(b)(1)_**. See **_Fed. R. Civ. P. 12(b)(1)_**. The court may consider matters outside the complaint when ruling on a **_Rule 12(b)(1)_** motion. See, e.g., _Seebach v. Beetling Design Corp., 46 F. Supp. 3d 876 (E.D. Wis. 2014)_. Thus, the contentions in Riley-El's response are properly before the court.

zon, Inc., 760 F.3d 654, 657 (7th Cir. 2014) (citing _28 U.S.C. § 1915(e)(1)_). Certain key facts, such as the last dates of employment of defendants who no longer work at Stateville, the basis for Riley-El's belief that he is allergic to soy, and the nature of any treatment provided for Riley-El's kidney condition, would be better developed with the assistance of counsel; a prompt inquiry into [*29] these issues will likely streamline this case. Moreover, the court's concerns about Riley-El's claim that a diet containing soy was unconstitutional, even in the absence of an allergy or other contraindication, was a basis for Riley-El's previous denial of Riley-El's motion for attorney assistance. That claim is no longer pending.[5]

Accordingly, the court sua sponte recruits counsel to represent Riley-El in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37. A separate order recruiting counsel will follow. By October 9, 2015, counsel shall either file an amended complaint or advise the court that he/she cannot do so. If counsel believes that filing an amended complaint would be inconsistent with his/her Rule 11 obligations, any motion to withdraw [*30] must provide a detailed list of investigatory steps taken by counsel.

## IV. CONCLUSION

The defendants' motions to dismiss [25], [85], and [109] are granted in part and denied in part. Riley-El's claims that the defendants were deliberately indifferent to the generalized risks of a soy-based diet, in the absence of an allergy or medical condition for which soy is contraindicated, are dismissed. All claims against Godinez, Shicker, Taylor, Randle, Sledge, and Bailey are dismissed pursuant to _Fed. R Civ. P. 12(b)(6)_. The claims against Walker are dismissed pursuant to _Fed. R. Civ. P. 41(b)_. The remaining defendants shall answer the complaint by August 17, 2015. The court sua sponte names Pontiac Correctional Center Warden Randy Pfister as a defendant for the purposes of Riley-El's claim for injunctive relief. The U.S. Marshal is appointed to serve Pfister. The Clerk is directed to issue summonses for service on Pfister and to send Riley-El a blank USM-285 form along with a copy of this order. The court advises Riley-El that a completed USM-285 form is required to serve Pfister. The U.S. Marshal will not attempt to serve Pfister unless and until the required form is received. The court recruits counsel to represent Riley-El in accordance [*31] with counsel's trial bar obligations under the District Court's Local Rule 83.37. A separate order recruiting counsel will follow. By October 9, 2015, counsel shall either file an amended complaint or advise the court that he/she cannot do so and file a motion as detailed in this opinion. A status hearing is set for October 16, 2015 at 9:30 a.m.

Date: July 27, 2015

/s/ Joan B. Gottschall

United States District Judge

---

[5] The court previously questioned whether counsel should be recruited in light of Riley-El's claim that consuming soy and ingesting prescribed pain relievers caused him to develop PKD. This claim is based on Riley-El's assertions that PKD is hereditary and that none of his relatives have PKD; this led Riley-El to conclude that soy must be responsible. Counsel should investigate and determine if this claim is potentially meritorious.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WALTER JEFFERSON, # B-31401, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11-cv-0489 -SCW |
| | ) | |
| DR. FENOGLIO, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM and ORDER

**WILLIAMS, Magistrate Judge:**

Plaintiff Jefferson, a prisoner of Illinois at Lawrence Correction Center in Lawrence, IL, ("Lawrence") filed a complaint alleging various deprivations of his constitutional rights under 42 U.S.C. § 1983 (Doc. 1), seeking redress for wrongs rooted in what Mr. Jefferson alleges throughout the filings is a mostly-soy diet (*see, e.g.* Doc. 1, pp. 1, 6; Doc. 49-4, p. 1; Doc. 41-2, p. 10:13-25). Currently, there are two dueling Motions for Summary Judgment (Doc. 40) (Doc. 49), which the Court takes up at this time. For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

### Findings of Fact

The only claim before this Court is Mr. Jefferson's allegation of deliberate indifference to his medical needs precipitated by Dr. Fenoglio's failure to order a thyroid blood test. (Doc. 12, p. 8). Both parties have moved for summary judgment on this count.

Mr. Jefferson was transferred to Lawrence in April of 2009. (Doc. 49-1, p. 6). On February 18, 2010, Mr. Jefferson was seen by the LPN, who recorded that he was experiencing cold feet and hands, and discomfort. (Doc. 49-1, p. 7). Mr. Jefferson requested a thyroid test at this

1

time. (Doc. 49-1, p. 7). On March 11, 2010, Mr. Jefferson was diagnosed with hyperlipidemia. (Doc. 41-3, p. 1). Mr. Jefferson was scheduled for hyperlipidemia labs on September 14th and August 21st during that visit. (Doc. 41-3, p. 1). A June 17, 2010 doctor's note also indicates that Mr. Jefferson requested a thyroid test; his symptoms included cold feet and hands and poor short term memory. (Doc. 49-1, p. 8). Dr. Fenoglio conducted a physical examination on that date. (Doc. 49-1, p. 8). Mr. Jefferson was seen by the LPN on July 13, 2010. (Doc. 49-1, p. 9). He again requested a thyroid test and commented that he had already been denied several times. (Doc. 49-1, p. 9). He denied current complaints. (Doc. 49-1, p. 9). Dr. Fenoglio examined Mr. Jefferson on September 13, 2010. (Doc. 49-2, p. 1). He noted hyperlipidemia and that Mr. Jefferson continued to ask for a thyroid test due to his memory loss and irregular bowels. (Doc. 49-2, p. 1). Follow-up labs were for his hyperlipidemia were again ordered. (Doc. 41-3, p. 4). Plaintiff refused medication for hyperlipidemia. (Doc. 41-3, p. 5). He did so again on March 15, 2011. (Doc. 41-3, p. 6). Plaintiff refused medication again on September 13, 2011 and March 1, 2012. (Doc. 41-3, pp. 7-8). Dr. Fenoglio swore out an affidavit stating that he did not test Mr. Jefferson for thyroid function during his tenure at Lawrence because Mr. Jefferson's symptoms did not clinically indicate that test. (Doc. 49-2, p. 12). Dr. Fenoglio left Lawrence in October of 2012. (Doc. 49-2, p. 11).

On March 13, 2013, Plaintiff had a thyroid test at the University of Illinois Medical Center. (Doc. 49-1, p. 10). The test results showed that his thyroid was functioning within a normal range. (Doc. 49-1, p. 10). He discussed these results with a Licensed Practical Nurse, who explained to Mr. Jefferson that "[his] thyroid levels are normal," and whose professional judgment in light of his symptoms was to "educate [Mr. Jefferson] on proper diet and exercise." (Doc. 49-7, pp. 7-8).

Mr. Jefferson has no medical training (Doc. 41-2 pp. 4-5) and no dietary training sufficient to make him competent to testify about causal relationships between a soy diet and health conditions. (Doc. 41-2 pp. 4-5).

**Conclusions of Law**

**A.      Summary Judgment Standard**

Summary judgment, which is governed by FEDERAL RULE OF PROCEDURE 56, is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multiut Corp.***, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).[1] The party seeking summary judgment bears the initial burden of demonstrating, based on the pleadings, affidavits and/or information obtained via discovery, the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. ***Anderson***, **477 U.S. at 248**. If a party fails to properly address another party's assertion of fact, courts may "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." FED. R. CIV. P. 56(e). A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. ***Albiero v. City of Kankakee***, 246 F.3d 927, 931–32 (7th Cir. 2001). ***See also Steen v. Myers***, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal quotation marks omitted). There is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." ***Van***

---

[1] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. ***Sow v. Fortville Police Dept.***, 636 F.3d 293, 300 (7th Cir. 2011).

*Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010); *accord Anderson*, 477 U.S. at 248 (finding material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).

At summary judgment, the Court's role is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

**B.      Deliberate Indifference to Plaintiff's Medical Needs**

An inmate's dissatisfaction with medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the care was substandard to the point of negligence or malpractice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. MacCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). But in certain circumstances, a constitutional claim may lie if a prison official's actions amount to a failure to treat a serious medical condition. Whether a prison official has been deliberately indifferent depends on a 2-part test: "the plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard." *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). The first prong of the test is a threshold inquiry: inmates without objectively serious medical conditions under the law cannot have been treated with deliberate indifference to their medical needs actionable under **42 U.S.C. § 1983**.

The Seventh Circuit considers the following to indicate a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) the "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) the "presence of a medical condition that

4

significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters*, **111 F.3d 1364, 1373 (7th Cir. 1997)**. Alternatively, a plaintiff can demonstrate a condition that is so obvious that even a lay person would easily recognize the necessity of medical treatment is a serious medical need. *Id.*

<u>Analysis</u>

Mr. Jefferson has failed to produce any evidence that he suffers a medical condition serious enough to satisfy the threshold inquiry. The only diagnosis by medical professionals he presents to the Court is "asymptomatic hyperlipidemia," which is a condition involving abnormally high lipids or lipoproteins in the blood. (Doc. 41-3, p. 1). Even taking his allegations of suffering symptoms variously described as "memory loss, bowels [*sic*], and gastrointestinal problem[s] [and] other issue[s]," (Doc. 49, p. 3 ¶7), "memory loss, low blood pressure, and brain fog" (Doc. 30, p. 7), and "brainfog [*sic*], memory loss, low body temperature, cold all the time" (Doc. 1-1, p. 1) at face value and as maladies truly suffered, these vague symptoms do not rise to the level of seriousness that could satisfy any of the above alternatives.

The only injury Mr. Jefferson suffers that is evident from the record is his hyperlipidemia, which he has refused treatment for a period of at least two years. Even if hyperlipidemia does qualify as an injury that a reasonable doctor or patient would find important or worthy of comment, an inmate's willing and un-coerced refusal to be treated for it cannot be grounds for a doctor's liability for deliberate indifference to a prisoner's medical needs. Mr. Jefferson's alleged thyroid deficiency is not material to this prong of the objectively-serious-injury analysis, which asks if there exists an injury that a reasonable doctor or patient would find important or worthy of comment because his thyroid is objectively healthy.

Even supposing Mr. Jefferson has an undiagnosed medical condition underlying his complained-of symptoms, he has submitted no evidence that it or the symptoms significantly affect

his daily activities. Mr. Jefferson has not submitted any evidence that he suffers pain at all, much less chronic and substantial pain. The only reference to pain that appears in the record is Mr. Jefferson's assertion in his pleadings and that he is "in constant pain and suffering." This allegation is uncorroborated by the symptoms listed in his medical records during the relevant time period. Finally, Mr. Jefferson has not produced any evidence that he suffers from a condition so obvious that that even a lay person would easily recognize the necessity of medical treatment. Quite the opposite is true. The record shows that Mr. Jefferson's thyroid is healthy, (Doc. 41-5, p.1), and that in his lay judgment, his hyperlipidemia does not bear treatment, (Doc. 41-3, pp. 5-9).

Thus this Court is left to conclude that Mr. Jefferson is simply unhappy with his medical care under Dr. Fenoglio. In view of the alternative self-diagnoses Mr. Jefferson presents to the court across his filings, Mr. Jefferson's dissatisfaction seems to stem from Dr. Fenoglio's failure to investigate Mr. Jefferson's wandering diagnoses of his vaguely-stated symptoms related to his soy diet. (*See* Docs. 1-1, 49-1, 52). The one thing each diagnosis has in common is that somehow, by depressing his thyroid function or by causing internal visceral bleeding, the high levels of soy in the prison diet at Lawrence are to blame. Simply working as a food handler in prison does not qualify a person to credibly speculate about dietary causes of medical symptoms. In view of the circumstances, Mr. Jefferson is simply dissatisfied with his high-soy diet, and he is unhappy that Dr. Fenoglio would not investigate his lay theories

Mr. Jefferson does not suffer an objectively serious medical condition as defined by the five-alternative **Gutierrez** standard, and thus the facts of the instant case fail the **Sherrod v. Lingle** test. Because the record shows that Mr. Jefferson does not suffer an objectively serious medical condition, the court need not consider whether Dr. Fenoglio acted with deliberate indifference to Mr. Jefferson's needs—a doctor cannot be liable for failure to treat a condition that

does not exist. While failure to treat an inmate can amount to unlawful deliberate indifference, refusing to pursue every, or even one diagnostic line of inquiry a non-expert inmate raises cannot.

Because the undisputed material facts show that Mr. Jefferson does not suffer an objectively serious medical condition, summary judgment in favor of Defendant Fenoglio is proper.

## Conclusion

Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment, and **GRANTS** Defendant's Motion for Summary Judgment. The Clerk of the Court is directed to enter judgment in Defendant's favor and close the case.

**IT IS SO ORDERED**.
DATE: December 17, 2013.

/s/ *Stephen C. Williams*
**STEPHEN C. WILLIAMS**
United States Magistrate Judge

7

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Antwann Green, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No: 12 C 50130 |
| | ) | |
| Wexford Health Sources, et al., | ) | |
| | ) | |
| *Defendants.* | ) | Judge Frederick J. Kapala |

## ORDER

Defendant Cindy Eykamp's motion for judgment on the pleadings [299] is granted. Eykamp is terminated from this case.

## STATEMENT

Plaintiff, Antwann Green, has sued various prison officials alleging that they were deliberately indifferent to his serious medical conditions, namely hypothyroidism and diverticulosis. Relevant to the instant motion, Green has sued Cindy Eycamp, who is the dietary supervisor at the Dixon Correctional Facility ("Dixon") where Green was housed, alleging that she refused his request for a soy-free vegan diet based on his belief, founded on articles and studies read by Green, that a soy-filled diet exacerbated his hypothyroidism. Eycamp is not alleged to be a medical professional. Also, Green specifically alleges that he has never been prescribed a soy-free diet to treat his medical conditions by any of Dixon's doctors, who are also defendants based on similar theories. Based on the above, Eycamp has moved for judgment on the pleadings pursuant to Rule 12(c), arguing that she is entitled to qualified immunity.

"A dismissal under Rule 12(b)(6) and judgment on the pleadings under Rule 12(c) both employ the same standard: the complaint must state a claim that is plausible on its face." Vinson v. Vermilion Cnty., Ill., 776 F.3d 924, 928 (7th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When considering a Rule 12 motion based on an affirmative defense like qualified immunity, the complaint must contain "everything needed to show that the defendant must prevail." Edgenet, Inc. v. Home Depot U.S.A., Inc., 658 F.3d 662, 665 (7th Cir. 2011). In other words, it must be "plain from the complaint that the defense is indeed a bar to the suit" before it can be dismissed at the Rule 12 stage. Jay E. Hayden Found. v. First Neighbor Bank, N.A., 610 F.3d 382, 383 (7th Cir. 2010).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, 575 U.S. ___, 135 S. Ct. 2042, 2044 (2015) (per curiam)

(quotation marks omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. (quotation marks omitted). "When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Id. (alteration and quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quotation marks omitted).

Green argues that the right in question is a "right to a healthy, medically necessary diet." (Pl's Resp. at 9.) However, that definition of the relevant constitutional right is too general, as it fails to take into account the context in which the state official, here Eycamp, was forced to make her decision. See White v. Stanley, 745 F.3d 237, 241 (7th Cir. 2014) (cautioning courts about defining relevant constitutional inquiries too broadly). Instead, the right in question is whether a prisoner has a right to demand from a non-medical prison official a specialized diet without a medical prescription of that diet based on nothing more than the prisoner's belief (even a potentially informed belief) that such a diet would be medically beneficial. Framed correctly, no such right was clearly established at the time of Green's incarceration or up to the present. Neither the Supreme Court nor the Seventh Circuit has suggested such a right exists and a survey of the case law from outside the circuit does not indicate a clear trend (or any trend) towards recognition of such a right. See Abbott v. Sangamon Cnty., Ill., 705 F.3d 706, 731 (7th Cir. 2013) ("To determine whether a right is clearly established we look to controlling precedent from both the Supreme Court and this circuit, and if there is no such precedent we cast a wider net and examine all relevant case law to determine whether there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." (quotation marks omitted)).

Indeed, the relevant case law suggests that not only was the right not clearly established, but no such right exists at all. The Seventh Circuit explained in Arnett v. Webster that

> Non-medical defendants . . . can rely on the expertise of medical personnel. We have previously stated that if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. . . . This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

658 F.3d 742, 755 (7th Cir. 2011) (formatting, citations, and quotation marks omitted). Here, where Green lacked a prescription or any order from his treating physicians that a soy-free diet was necessary, Eycamp was permitted to rely on their expertise and reject his request for a specialized diet. There is no suggestion in the complaint that Eycamp had the authority to unilaterally modify Green's physicians' treatment orders by imposing a new diet-based therapy.

The cases cited by Green are not to the contrary. In Bryant v. Roth, No. 93 C 5552, 1995 WL 76879, at *3 (N.D. Ill. Feb. 17, 1995), the plaintiff was denied his prescribed specialty diet to treat hypoglycemia by prison officials who knew about his dietary needs and prescription and deliberately

2

denied him the prescribed treatment. Accordingly, the court found that qualified immunity did not protect the non-medical defendants, but only because "interference with prescribed treatment constitutes deliberate indifference." Id. Likewise, in Dye v. Sheahan, No. 93 C 6645, 1995 WL 109318, at *3, 5 (N.D. Ill. Mar. 10, 1995), the court dealt with a situation where the non-medical defendant "failed to provide [the prisoner] with his medically prescribed meals" despite knowing of their necessity. The out-of-circuit precedent cited in footnote five of Green's brief follow the same pattern: non-medical defendants interfering with treatment plans by refusing to provide prescribed diets. The critical difference here, of course, is that no one but Green himself has determined that a soy-free diet is medically necessary.[1] No case has suggested that a non-medical prison official is charged with knowing how each ingredient in its otherwise-healthy meal will effect each prisoners' medical conditions in the absence of guidance from the prison's physicians. Thus, it is plain from the face of the complaint that Eycamp is protected by qualified immunity because her decision to deny a soy-free diet was neither plainly incompetent nor a knowing violation of the law.

However, Green argues that one of the Dixon doctors testified at her deposition that "the Warden at [Dixon] expressly prohibited her from prescribing special diets to inmates" so that Green had no opportunity to get a prescription for a special diet. (Pl.'s Resp. at 10.) Initially, this court is typically not permitted to consider deposition testimony in considering a Rule 12(c) motion. See Fed. R. Civ. P. 12(d). Nevertheless, even if this court were to reinterpret his argument and assume that Green is requesting an opportunity to amend his pleadings to include that allegation, the court would still reject that request as futile and be forced to dismiss Eycamp. See Doe v. Vill. of Arlington Heights, 782 F.3d 911, 919 (7th Cir. 2015) (holding that leave to amend "may be denied where the amendment would be futile"). An allegation that the warden of Dixon interfered with Green's treatment by refusing to allow doctors to prescribe medically-necessary diets does not implicate Eycamp, she must still have personally "caused or participated in a constitutional deprivation." Pepper v. Vill. of Oak Park, 430 F.3d 805, 809 (7th Cir. 2005) (quotation marks omitted). Under the new allegation, the deprivation would be the interference with the prescription, and only the warden is alleged to have done that. Thus, since no clearly established law suggests that a prisoner has a right to a specialized medical diet based solely on his own say-so, Eycamp would still have to be dismissed.

---

[1]This is also one of the critical differences in this court's denial of a previous medical defendant's motion to dismiss and Eycamp's motion to dismiss, notwithstanding Green's assertion that they are the same in his brief. (See Pl.'s Resp. at 12 n.7.) Assuming Green can prove that it was deliberately indifferent for his physician to refuse to prescribe the soy-free diet, this court ruled he stated a claim against the doctor. But that order did not address the situation of a non-medical prison official who is permitted to rely on the prison doctors to treat prisoners. It also did not address qualified immunity at all.

3

The motion for judgment on the pleadings is granted.  Eycamp is terminated from this case.

Date: 7/6/2015                                  ENTER:

                                                _____
                                                FREDERICK J. KAPALA
                                                District Judge

4